```
 1

 2

 3

 4              UNITED STATES DISTRICT COURT

 5             CENTRAL DISTRICT OF CALIFORNIA

 6                   SOUTHERN DIVISION

 7      THE HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

 8                              CERTIFIED TRANSCRIPT

 9      ALLERGAN USA, INC., et al., }
                        Plaintiff,  }
10           vs.                     }
                                     }  SACV-13-1436-AG
11      MEDICIS AESTHETICS, INC.,    )
        et al.,                      )
12                      Defendants.  }
        ---------------------------}
13

14


15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Santa Ana, California

17                   August 12, 2014

18


19                   SHARON A. SEFFENS, RPR
                     United States Courthouse
20                   411 West 4th Street, Suite 1-1053
                     Santa Ana, CA  92701
21                   (714) 543-0870

22

23

24

25
```

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiffs:

3    MICHAEL J. KANE
     FISH & RICHARDSON P.C.
4    3200 RBC Plaza
     60 South Sixth Street
5    Minneapolis, MN  55402
     (612) 337-2502
6
     LARA S. GARNER
7    FISH & RICHARDSON P.C.
     12390 El Camino Real
8    San Diego, CA  92130
     (858) 678-4332
9
     ELIZABETH M. FLANAGAN
10   FISH & RICHARDSON P.C.
     222 Delaware Avenue, 17th Floor
11   Wilmington, DE  19899
     (302) 778-8472
12

13   For the Defendants:

14   DONALD G. NORRIS
     NORRIS & GALANTER, LLP
15   523 W. Sixth Street, Suite 716
     Los Angeles, CA  90014
16   (213) 232-0855

17   WILLIAM F. CAVANAUGH
     SCOTT B. HOWARD
18   PATTERSON BELKNAP WEBB & TYLER, LLP
     1133 Avenue of the Americas
19   New York, NY  10036-6710
     (212) 336-2793
20

21

22

23

24

08:30   25
```

1    SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 12, 2014; 9:04 A.M.

08:56   2             THE CLERK:  SACV-13-1436-AG, Allergan USA, Inc.,

09:04   3    et al., versus Medicis Aesthetics, Inc., et al.

09:05   4             THE COURT:  Good morning.

09:05   5             Let's have appearances, please.

09:05   6             MS. GARNER:  Good morning, Your Honor.  Laura

09:05   7    Garner, and I have with me Michael Kane and Elizabeth

09:05   8    Flanagan.

09:05   9             MR. NORRIS:  Good morning, Your Honor.  Donald

09:05  10    Norris for the defendants.

09:05  11             MR. CAVANAUGH:  Good morning, Your Honor.  Bill

09:05  12    Cavanaugh on behalf of the defendants.

09:05  13             MR. HOWARD:  Good morning, Your Honor.  Scott

09:05  14    Howard on behalf of the defendants.

09:05  15             THE COURT:  All right, welcome all.  I hope you

09:05  16    all received the tentative that was sent out.

09:05  17             I am prepared to describe how we should proceed,

09:05  18    but I am also open to suggestions.  Do the parties before me

09:06  19    have any suggestions on how we should proceed?

09:06  20             MR. CAVANAUGH:  Your Honor, we conferred briefly.

09:06  21    Based on the Court's tentative ruling, it certainly appears

09:06  22    that the Court understands the technology at issue in this

09:06  23    case, and we don't think -- I don't think either side

09:06  24    believes that a tutorial is really necessary.

09:06  25             THE COURT:  I agree.

09:06  1      MR. CAVANAUGH:  From our perspective at oral

09:06  2  argument, there is only really one claim construction issue

09:06  3  we would like to take up with the Court, and that's on the 2

09:06  4  to 20 percent degree of cross-linking issue.

09:06  5      THE COURT:  I found that one of the most

09:06  6  interesting.  So you want to talk about 2 to 20 percent.

09:06  7      MR. CAVANAUGH:  Right.

09:06  8      MR. KANE:  Your Honor, as counsel said, we did

09:06  9  discuss it the hallway, and we don't believe that a

09:06  10  tentative is necessary.

09:07  11      THE COURT:  You mean a tutorial.

09:07  12      MR. KANE:  We don't believe that a tutorial is

09:07  13  necessary.  We have reviewed the tentative as well.  We

09:07  14  stand by our constructions and proposals that were submitted

09:07  15  in the briefing, but in the sense of what we do today to

09:07  16  accomplish and move things forward, Allergan is prepared to

09:07  17  submit on the tentative and has no issues that it would like

09:07  18  to raise with the Court.  Obviously we would like a chance

09:07  19  to respond to the defendants on the 2 to 20.

09:07  20      THE COURT:  All right, let's hear 2 to 20.  We

09:07  21  will go back and forth on that.  That really helps focus,

09:07  22  and that's one of the reasons we issue tentatives.

09:07  23      MR. CAVANAUGH:  Thank you, Your Honor.

09:07  24      THE COURT:  By the way, it's always helpful to

09:07  25  focus on any specific passages or lines or sections in the

09:08  1    tentative, but proceed as you wish.

09:08  2         MR. CAVANAUGH:  Your Honor, I think it would be

09:08  3    helpful if the Court has the '475 patent because I will

09:08  4    refer to sections there.  No graphics are really necessary.

09:08  5         THE COURT:  Very well.  I agree.  I'll get the

09:08  6    '475 patent.  Go ahead.

09:08  7         MR. CAVANAUGH:  Your Honor, in the tentative, you

09:08  8    concluded that this was not a clear statement of the scope

09:08  9    of the invention in column 9 at 30 to 34.  The Court gave a

09:08  10   number of reasons for that conclusion while noting I believe

09:08  11   that it is a close question.

09:08  12        Let me start with column 9, Your Honor, and the

09:08  13   language -- and the two sentences that follow that

09:09  14   statement.

09:09  15        THE COURT:  Just a moment.  I have to gather the

09:09  16   patent.

09:09  17        MR. CAVANAUGH:  I know it's Exhibit A to Ms.

09:09  18   Flanagan's deposition.

09:09  19        THE COURT:  All right.  I have it.

09:09  20        MR. CAVANAUGH:  Column 9, Your Honor, line 30,

09:09  21   this is what we are contending is the clear statement of the

09:09  22   scope of the invention:  "The degree of cross-linking in the

09:09  23   HA component of the present compositions is at least about

09:09  24   2 percent and is up to about 20 percent."  The two sentences

09:09  25   that follow when read in context with that are simply

09:09  1    pointing out ranges that fall within 2 to 20.

09:09  2          Now, in its decision -- and, for example, it says:

09:09  3    "In some embodiments, the degree of cross-linking is less

09:10  4    than about 6 percent, for example, is less than about

09:10  5    5 percent.  In other embodiments, the degree of

09:10  6    cross-linking is greater than 5 percent, for example, is

09:10  7    about 6 to 8 percent," and they talk about 4 to 12 percent.

09:10  8          Now, in its tentative, the Court noted, well,

09:10  9    there's not necessarily a lower bound being provided, and

09:10  10   the Court noted certain claims that refer to less than 6

09:10  11   percent and less than 5 percent.  I have two points as to

09:10  12   that, Your Honor.

09:10  13         The first is those are dependent claims.  You have

09:10  14   an independent claim that talks about the composition, which

09:10  15   we would say is defined by 2 to 20 percent degree of

09:10  16   cross-linking, so those are dependent claims.

09:10  17         The second point, and perhaps more importantly, is

09:10  18   if you look at column 16 and you look at those dependent

09:11  19   claims, claim 5 talks about less than about 6 percent.

09:11  20   Claim 6 talks about less than about 5 percent, but then

09:11  21   significantly, Your Honor, what the inventor does in

09:11  22   dependent claim 7 -- it talks about the soft tissue filler

09:11  23   of claim 4 wherein the HA composition has a degree of

09:11  24   cross-linking of about 2 percent.  He departs from using the

09:11  25   phrase "less than" and specifically uses the phrase "of

09:11   1    about 2 percent" thereby following the language in the

09:11   2    specification, which we say defines the scope of the

09:11   3    invention, up to 20 and at least 2 percent.

09:12   4            THE COURT:  If I were to say that range is not

09:12   5    consistently applied throughout the specifications and

09:12   6    claims, what would your response be?

09:12   7            MR. CAVANAUGH:  I think it is applied

09:12   8    consistently, Your Honor, because the only references to

09:12   9    degree of cross-linking are always within 2 to 20 in all the

09:12   10   examples that are provided.  When they use the term "present

09:12   11   composition," the inventor when talking about specific

09:12   12   embodiments is very clear.  He says, for example, in some

09:12   13   embodiments -- in column 7 at lines 11, 20, 29, he uses the

09:12   14   phrase "in other embodiments," column 7, line 18.

09:12   15           The Court notes that in one instance the inventor

09:13   16   uses the phrase "present description," which is different

09:13   17   from "present composition," but in that context, it's

09:13   18   clearly a specific example -- and they're talking about

09:13   19   column 14 -- that illustrates the release pattern of

09:13   20   Lidocaine.  So I think that there is a consistency

09:13   21   throughout the specification.  They're talking about this

09:13   22   range, 2 to 20.  That's what the inventor studied, and they

09:13   23   define the clear scope of that invention.

09:13   24           Now, in its opinion, the Court notes, well, that's

09:13   25   only used once.  Two thoughts on that, Your Honor.  The

09:13   1   first is if you look at the Astrazeneca case where they

09:13   2   found that Astrazeneca based on a statement in the invention

09:14   3   that the scope of the invention was simply the six

09:14   4   identified salts, there is one reference to that in the

09:14   5   specification.  There is a vaguer description in the

09:14   6   abstract, but if you focus on the body of the specification,

09:14   7   in Astrazeneca, they just said it once.

09:14   8          If you think about it, this isn't the type of

09:14   9   statement that you would necessarily repeat throughout the

09:14   10  specification.  You're saying here is my range.  This is

09:14   11  what I have invented, 2 to 20 percent, and then they go on

09:14   12  to discuss the specific examples that follow.

09:14   13         The Court also notes an issue of claim

09:14   14  differentiation, that claim 27 --

09:15   15         THE COURT:  Well, isn't it superflous for claim 27

09:15   16  to be stating that if I were to adopt your definition, and

09:15   17  isn't that a pretty powerful rule of construction?

09:15   18         MR. CAVANAUGH:  I would say no, Your Honor,

09:15   19  because if you look at the Astrazeneca case and the Edwards

09:15   20  case, in both of those Federal Circuit decisions, the

09:15   21  patentee raised claim differentiation.  In Astrazeneca,

09:15   22  there was a statement in the specification:  The present

09:15   23  invention is based on the following six salts.  There is

09:15   24  then a claim that recites those six salts.

09:15   25         Astrazeneca argued claim differentiation.  Our

09:15  1    invention isn't limited to those six salts because there is

09:15  2    a specific claim on it.  The Federal Circuit disagreed and

09:15  3    said, no, claim differentiation can't be used to override a

09:15  4    clear statement of the scope of the invention.

09:16  5            THE COURT:  Well, is this a clear statement of the

09:16  6    scope of the invention?

09:16  7            MR. CAVANAUGH:  It says the present composition

09:16  8    and a range of 2 to 20 percent.  I will give you a second

09:16  9    example of where claim differentiation while a rule of thumb

09:16  10   is not a rigid rule.  In addition to the Astrazeneca case,

09:16  11   the Edwards case, involving grafts that are intraluminally

09:16  12   introduced into the body.  The specification speaks of

09:16  13   the term -- the claim spoke of the term "graft."  The

09:16  14   District Court claim construction said "graft" is defined as

09:16  15   "intraluminal grafts."  Even though the claim only says

09:16  16   "graft," they added the term "intraluminal" based on the

09:17  17   language of the specification.

09:17  18            Edwards argued we have a claim that says "inside

09:17  19   of a vessel," and that's the definition of "intraluminal."

09:17  20   Claim differentiation.  Our claim should not be limited to

09:17  21   intraluminal grafts because we have a claim that essentially

09:17  22   says "intraluminal."  Again, as in the Astrazeneca case, the

09:17  23   Court disagreed and found claim differentiation could not be

09:17  24   used in that instance to override a clear statement of the

09:17  25   scope of the invention in the patent because the patentee

09:17  1    had referred throughout the specification to grafts as

09:17  2    intraluminal.

09:17  3           So I don't think claim differentiation ends up

09:18  4    being a powerful argument for the patentee in this instance,

09:18  5    Your Honor, based on Astrazeneca and based on the Edwards

09:18  6    decision.  Here there is a clear unequivocal statement.

09:18  7    Here is the range of the present compositions of my

09:18  8    invention.

09:18  9           Finally, Your Honor, the Court noted that, well,

09:18  10   this wasn't used to distinguish prior art, but that's not

09:18  11   the sole test for whether there has been a clear statement

09:18  12   of the scope of the invention.

09:18  13          THE COURT:  Surely you don't think I am saying

09:18  14   that's the sole test.

09:18  15          MR. CAVANAUGH:  No, I didn't, Your Honor.

09:18  16          THE COURT:  You mean it's a factor.

09:18  17          MR. CAVANAUGH:  But the Federal Circuit -- for

09:18  18   example, in the Edwards case, during the prosecution they

09:18  19   deleted the term "intraluminal."  Edwards said how could

09:19  20   this be construed as limited to "intraluminal" when we

09:19  21   deleted that term at one point during the prosecution

09:19  22   history?  The Federal Circuit said it wasn't material.  Your

09:19  23   deletion of it during prosecution wasn't particularly

09:19  24   material, so you can't cite it.

09:19  25          Here, Your Honor, the fact that -- what didn't

09:19   1   come up during the prosecution history doesn't answer the

09:19   2   question whether the inventor limited it for purposes of --

09:19   3   because if you look at all the prior art they cite, whether

09:19   4   it was done for those purposes or whether because as the

09:19   5   specification makes clear that's what they were testing.

09:19   6   That was the range that they were testing.

09:19   7         So for all those reasons, Your Honor, we think

09:19   8   this does come down to a clear statement.  I think the

09:19   9   language of those dependent claims strengthens that

09:19   10   argument because if the inventor's view was I'm not bound

09:20   11   by this 2 percent, why would that dependent claim be

09:20   12   written differently than the two others?  In that

09:20   13   dependent claim, he confirmed not that 2 percent -- that's

09:20   14   his lower boundary -- but that confirms what's in the

09:20   15   specification.

09:20   16         THE COURT:  Is it your position that the range 2

09:20   17   to 20 is consistently applied throughout the specifications

09:20   18   and claims?

09:20   19         MR. CAVANAUGH:  I believe it is, Your Honor.

09:20   20         THE COURT:  Okay.  Let's hear from the plaintiff,

09:20   21   and that might be a good lead-off question to the plaintiff.

09:20   22         MR. KANE:  Your Honor, we do not believe that it's

09:20   23   used consistently throughout the specification or the

09:20   24   claims.  I think what is important is how often it is used,

09:21   25   when it is used, and where it is used.  I think you have to

09:21  1    look at the entire invention here.

09:21  2            I will refer the Court to the '475 Patent as well.

09:21  3    I would start with the title of the patent, "Hyaluronic

09:21  4    Acid-Based Gels Including Lidocaine."  So that's the title.

09:21  5    That's telling what the invention is about, adding

09:21  6    lidocaine.

09:21  7            If you look at the abstract --

09:21  8            THE COURT:  You know what I am going to ask you to

09:21  9    do?  Put it on the elmo.

09:21  10           MR. KANE:  Your Honor, if you look at the

09:22  11   abstract, the very first sentence says:  "Disclosed herein

09:22  12   are soft tissue fillers, for example, dermal and subdermal

09:22  13   fillers based on hyaluronic acids and pharmaceutically

09:22  14   acceptable salts thereof.  In one aspect, the hyaluronic

09:22  15   acid-based compositions include a therapeutically effective

09:22  16   amount of at least one anesthetic agent, for example,

09:22  17   lidocaine."  There's nothing here about the degree of

09:22  18   cross-linking.  There is nothing here about that.  It's all

09:22  19   about the gel with the anesthetic agent.

09:22  20           We then continue through the patent.  I'm

09:23  21   referring to the Background Section, Your Honor.  This is at

09:23  22   column 2 starting at about line 29.  They identify the

09:23  23   problem that the patent is attempting to solve.  "It has

09:23  24   been proposed to incorporate certain therapeutic agents, for

09:23  25   example, anesthetic agents such as Lidocaine."  Then it

09:23   1   continues in the last paragraph of the background:  "It is

09:23   2   an objective of the HA-based soft filler compositions and

09:23   3   methods of making them" --

09:23   4            THE COURT:  "Making and using them."

09:23   5            MR. KANE:  Yes.  "Making and using them as

09:23   6   described herein to provide soft tissue fillers that do not

09:24   7   cause allergic reactions in patients, are biocompatible and

09:24   8   stable and usable in vivo and include one or more local

09:24   9   anesthetic agents."  Again, there is no description about

09:24   10  the degree of cross-linking or any kind of range of degree

09:24   11  of cross-linking.

09:24   12           Then you move to the summary of the invention, the

09:24   13  very first description of what the invention is.  Again,

09:24   14  Your Honor, the present description relates to soft tissue

09:24   15  fillers, for example, dermal and subdermal fillers based on

09:24   16  hyaluronic acid, and pharmaceutically acceptable salts of

09:24   17  HA" -- and they give some examples -- "including a

09:24   18  therapeutically effective amount of at least one anesthetic

09:24   19  agent."

09:24   20           Then it continues.  Again, Your Honor, in terms of

09:25   21  is it consistent, this sentence is very important starting

09:25   22  at line 42:  "The present HA compositions describing the

09:25   23  invention, including at least one anesthetic agent, have

09:25   24  enhanced stability relative to conventional HA-based

09:25   25  compositions, for example, Lidocaine," and it continues.

09:25  1   There is a description of the invention, the present HA

09:25  2   compositions.  There is no discussion about the degree of

09:25  3   cross-linking.

09:25  4          The entire invention here, the disclosure, the

09:25  5   problem that is being solved is this is going to tell the

09:25  6   world how to make -- and it's the first of its kind of HA

09:25  7   fillers -- that it can have Lidocaine that is stable and

09:25  8   usable.  That's the problem.  It has nothing to do with the

09:25  9   degree of cross-linking.

09:26  10         THE COURT:  Hold on.  I'm not getting that

09:26  11   statement.  Cross-linking does affect stability doesn't it?

09:26  12         MR. KANE:  But the degree of cross-linking is not

09:26  13   the novel invention.  That's not the novel aspect of this.

09:26  14   There were HA fillers that had a degree of cross-linking

09:26  15   between 2 and 20 before this invention.  There's nothing

09:26  16   here where the applicant is saying other people have a

09:26  17   degree of cross-linking at 50.  Other people have a degree

09:26  18   of cross-linking at 1.  I have found out that the important

09:26  19   range is 2 to 20.  That's my invention.

09:26  20         It's not what this is about at all.  It's all

09:26  21   about being able to take an HA filler that has the desirable

09:26  22   characteristics for the treatment and being able to add

09:26  23   Lidocaine and maintain a useable stable product.

09:27  24         If you continue on in the summary --

09:27  25         THE COURT:  Hold on just one moment.

09:27  1          MR. KANE:  Certainly.

09:27  2          THE COURT:  Why is there a mention of 2 to 20?

09:27  3          MR. KANE:  Well, that is a range that was looked

09:27  4  at, but that's not limiting, Your Honor.

09:27  5          THE COURT:  When I asked a specific question about

09:27  6  whether that range is consistently applied, you said no,

09:27  7  correct?

09:27  8          MR. KANE:  Correct.

09:27  9          THE COURT:  But are all your inconsistent

09:27  10  applications within that range?

09:27  11          MR. KANE:  We don't think so, no.  As I will show

09:27  12  you, in the summary of the invention, there are

09:27  13  inconsistencies.  Again, at the very beginning of the

09:28  14  patent --

09:28  15          THE COURT:  Inconsistencies outside that range?

09:28  16          MR. CAVANAUGH:  Yes.  There are statements here,

09:28  17  for instance, less than 5 percent at the very beginning of

09:28  18  the patent.

09:28  19          THE COURT:  Five percent is within the range of 2

09:28  20  to 20.

09:28  21          MR. KANE:  One percent is less than five percent

09:28  22  and is not within the range.

09:28  23          THE COURT:  I understand your point.

09:28  24          MR. KANE:  If you look at the summary of the

09:28  25  invention -- we are at column 3, line 25.  It says, "the

09:28  1    degree of cross-linking less than about 5 percent.  Then it

09:28  2    it continues, "for example, about 2 percent."  It doesn't

09:28  3    say greater than 2 percent.  It doesn't say less than 5 and

09:28  4    greater than 2.  It says less than 5, for example, about 2.

09:28  5          THE COURT:  Well, "about" is the phrase the

09:28  6    defendants are proposing.

09:28  7          MR. KANE:  I understand.  I will come to that in a

09:28  8    minute, but certainly it doesn't say greater than 2 or

09:29  9    greater than about 2.

09:29  10         If we continue down to column -- again, we are

09:29  11   still in column 3, lines 63 to 64.  "The HA component has a

09:29  12   degree of cross-linking of less than about 6 percent or less

09:29  13   than about 5 percent."  No mention of 2.  It covers 1.  It

09:29  14   covers one-half.  It covers three-quarters.  Unequivocal.

09:29  15         Column 4 --

09:29  16         THE COURT:  Unequivocal?  You can't say that less

09:29  17   than 5 percent unequivocally references 1 percent.

09:29  18         MR. KANE:  I think it covers 1 percent.

09:29  19   Unequivocally -- there is no limiting language about that.

09:29  20         THE COURT:  Okay.

09:29  21         MR. KANE:  Same thing in column 4.  Again, still

09:29  22   in the summary of the invention.  "HA component having a

09:29  23   degree of cross-linking of less than 5 percent."

09:30  24         THE COURT:  When you're reading from it, I just

09:30  25   want the record to be clear that it says, "less than about 5

09:30   1   percent."

09:30   2           MR. KANE:  I apologize.

09:30   3           Then at line 17, it says:  "HA composition with a

09:30   4   degree of cross-linking less than about 5 percent."  So in

09:30   5   the Background Section, there is no discussion about the

09:30   6   degree of cross-linking at all.  It's all about adding

09:30   7   Lidocaine.  In the beginning of the summary of the

09:30   8   invention, the discussion is about HA fillers with

09:30   9   Lidocaine.  There is no limitation at all on the amount of

09:30   10  degree of cross-linking.  Then here throughout the summary

09:30   11  of the invention, there are four references to a degree of

09:30   12  cross-linking, none of which have the 2 to 20 range, one of

09:30   13  which says about 2, but three of which has no mention of 2

09:30   14  at all.

09:30   15          This is absolutely inconsistent with -- that the

09:31   16  invention is limited and consistently limited to 2 to

09:31   17  20 percent.  As the Court knows, the case law is very clear.

09:31   18  The Phillips case is very clear.  The Thorner case, which is

09:31   19  a relatively recent Federal Circuit case, is again very

09:31   20  clear.  There are only two exceptions to this general rule

09:31   21  that you get the plain meaning, lexicography -- they are not

09:31   22  arguing lexicography here -- or a clear disavow of scope,

09:31   23  meaning words of "manifest exclusion."

09:31   24          THE COURT:  What are you reading from?

09:31   25          MR. KANE:  I am reading from Thorner, "words of

09:31   1   manifest exclusion consistently and uniformly being used

09:32   2   throughout the specification.  They just aren't here, and

09:32   3   the Court has noted that they're not here.

09:32   4          The other portions of the intrinsic evidence

09:32   5   conflict with that interpretation.  As the Court noted in

09:32   6   its tentative order, this 2 to 20 percent doesn't ever

09:32   7   appear except in claim 27, but it's never anywhere else in

09:32   8   the specification.  If that was important, if the invention

09:32   9   was so limited, you would have expected to see this

09:32   10  described elsewhere.  You don't.

09:32   11         The Court also noted that -- again, claims 5, 6,

09:32   12  and 7 that we just went through are also inconsistent.  In

09:32   13  fact, those claims come right out of the summary of the

09:32   14  invention that I just went through.  There is no discussion

09:33   15  of 2 and 20 in the summary of the invention, so counsel's

09:33   16  argument that claims 5, 6 and 7 confirm that we are in the

09:33   17  range is actually completely inconsistent with the summary

09:33   18  of the invention.

09:33   19         Actually I would argue claim 7 doesn't confirm any

09:33   20  kind of a lower limit.  If it was going to confirm some

09:33   21  lower limit, there would be language such that it would say

09:33   22  greater than about 2 percent, 2 percent or greater,

09:33   23  something like that.  This is actually calling out it's

09:33   24  about 2 percent, which of course has to have some value

09:33   25  below 2 percent.  It's not saying 3 percent.  That claim

09:33  1   wouldn't cover 6 percent.  It only covers about 2 percent.

09:33  2   So it's not calling out a range.  It's calling out --

09:33  3        THE COURT:  Patentable would be discovery of a 2

09:33  4   to 20 percent range -- the problem has been solved, and it's

09:34  5   2 to 20 percent.  Do you think that would be patentable?

09:34  6        MR. KANE:  I don't think so.  I think the people

09:34  7   who were doing this -- I think Allergan's previous products

09:34  8   fell within that range.  There's lots of products that fell

09:34  9   within that range that are all prior art, so that can't be

09:34  10  the novel aspect.  That's not the invention here, finding a

09:34  11  new range.

09:34  12        THE COURT:  My question does not preclude it from

09:34  13  being part of the novel aspect, but go ahead.  I understand.

09:34  14        MR. KANE:  That alone I don't think could be a

09:34  15  distinguishing feature because there was present plenty of

09:34  16  art out there that had cross-linking in that range.

09:34  17        As the Court noted, there is nothing in the

09:34  18  prosecution history.  These are the things that the cases

09:34  19  have talked about being important.

09:34  20        If you look at the two cases that were cited in

09:34  21  the briefs primarily -- one was the Honeywell case.  In that

09:34  22  case, the Court found that there was a limitation, but in

09:35  23  that case, there were four separate statements that the

09:35  24  Court relied upon, so it was uniform.  It was consistent.

09:35  25        In the Astrazeneca case that counsel mentioned,

09:35  1    interestingly what the Court noted was that the very first
09:35  2    sentence that described the invention had those six
09:35  3    chemicals.  Again, it was unequivocal.  Here is our
09:35  4    invention.  Here are the six chemicals.  It was in the very
09:35  5    first sentence.  So the Court found that that first sentence
09:35  6    that told you what the invention was was unequivocal, and
09:35  7    then the entire structure of the patent -- again, you have
09:35  8    to look at the case.  The facts are all specific in these
09:35  9    cases obviously, but in that case, it was also the structure
09:36  10   where they were claiming salts from certain categories.
09:36  11   They didn't claim all the salts in the category.  That's
09:36  12   part of the Federal Circuit's analysis, too.  They picked
09:36  13   and chose.

09:36  14          So they went through and said we have a couple
09:36  15   different categories of salts.  We are going to take five
09:36  16   from this one, not all of them.  We are going to take one
09:36  17   from this one, not all of them.  Those are our six.  That's
09:36  18   our invention.  Then later when the applicant tries to come
09:36  19   back and says, no, no, no, we are not limited to those, but
09:36  20   we can get other salts in those categories, the Court says,
09:36  21   no, you can't.  There is nothing like that here.

09:36  22          These cases are just completely different where
09:36  23   you have got all these broad statements in the abstract.  In
09:36  24   Astrazeneca, the Court also noted the abstract was
09:36  25   consistent.  Comparing Astrazeneca to the '475 Patent, the

09:36    1    abstract doesn't mention anything about the degree of

09:36    2    cross-linking.  The first sentence in the first paragraph

09:36    3    doesn't mention anything about the degree of cross-linking.

09:36    4    Those are the portions of the patent that that Circuit

09:37    5    focused on in Astrazeneca because right up front the

09:37    6    applicants were telling the world here is our invention.

09:37    7         In this case, the applicants told the world what

09:37    8    their invention was up front.  Here is what the abstract

09:37    9    say.  Here's the problem we are trying to solve.  Here is

09:37    10   the summary of our invention.  Never mentioned this 2 to 20

09:37    11   range.  Later on in column 9 of the patent, there is a

09:37    12   sentence.  They are now trying to say that one sentence in

09:37    13   isolation limits the entire disclosure.  We think that's

09:37    14   wrong.  We think you got it right in the tentative, Your

09:37    15   Honor.

09:37    16        The other point here besides the legal point is

09:37    17   that in their briefing defendants set this up as an

09:37    18   alternative argument.  The Court may recall this is related

09:37    19   to the water solubility or insolubility argument that the

09:37    20   the Court has ruled upon and that the parties are now

09:38    21   contesting.

09:38    22        So in their opening brief at pages 13 and 14, they

09:38    23   said --

09:38    24        THE COURT:  The Court has ruled upon -- you were

09:38    25   contesting, and I ruled in favor of the defense on water

09:38   1   insolubility.

09:38   2        MR. KANE:  We are not arguing that today.  We are

09:38   3   not arguing that in the tentative.  You did rule against me

09:38   4   on that point.

09:38   5        THE COURT:  Against your client.

09:38   6        MR. KANE:  Against our client.  But in our opening

09:38   7   brief at pages 13 and 14, again, they said it was an

09:38   8   alternative argument, but if you don't include the water

09:38   9   insolubility of the cross-link HA, then you have to include

09:38   10   the 2 percent because we have to have some way to decide is

09:38   11   the HA free HA or cross-linked HA?  They repeated that in

09:38   12   their reply brief at seven.

09:38   13        As you said, Your Honor, you ruled against

09:38   14   Allergan on that point.  The question I ask then is if they

09:38   15   said it was in the alternative, why do they want it still?

09:39   16   The reason is very simple.  They are trying to manufacture a

09:39   17   noninfringement argument, and it is completely inconsistent

09:39   18   with the specification.

09:39   19        THE COURT:  Do I take into account the purposes of

09:39   20   claim construction?

09:39   21        MR. KANE:  Well, I think it's instructive that

09:39   22   before they had told you it's an alternative and now --

09:39   23        THE COURT:  I should construe claims in the

09:39   24   pristine world unaffected by what result it will have?  It's

09:39   25   kind of a little conversation I have had with my clerk over

09:39  1   here.

09:39  2            MR. KANE:  I understand.  I have dealt with judges

09:39  3   in both camps.

09:39  4            THE COURT:  And judges in this court.

09:39  5            MR. KANE:  So let's just take a look at this.  I

09:39  6   think it's instructive because there isn't this

09:39  7   interrelationship.  They set it up as you need -- this

09:39  8   limitation is necessary to distinguish free HA from

09:39  9   cross-linked HA.  Now, in that argument, they cited four

09:39  10  prior art references that describe the cross-link HA as

09:40  11  water insoluble.

09:40  12           As noted in the briefing, Allergan didn't ever

09:40  13  contest that cross-linked HA was water insoluble.  We just

09:40  14  didn't think that was necessary in the construction.  They

09:40  15  have identified four references:  The Calais reference,

09:40  16  Exhibit 2; the Sadozai reference; Exhibit 4, the Debacher

09:40  17  reference --

09:40  18           THE COURT:  You have got the patent there, right?

09:40  19           MR. KANE:  I do, Your Honor.

09:40  20           THE COURT:  Are you citing references from the

09:40  21  patent?

09:40  22           MR. KANE:  No.  I'm citing references used by the

09:40  23  defendants to illustrate that cross-linked HA is water

09:41  24  insoluble.

09:41  25           THE COURT:  Understood.

09:41   1          MR. KANE:  The final reference they cited is

09:41   2    Lebreton, which is Exhibit 6.  So they gave you four

09:41   3    references, Your Honor, where they said here's where --

09:41   4    those skilled in the art say that water soluble --

09:41   5    cross-linked HA is insoluble.  They have given you zero

09:41   6    references where anyone makes a distinction between free HA

09:41   7    and cross-linked HA based on the degree of cross-linking.

09:41   8    It's always based on the degree of solubility, which the

09:41   9    Court has ruled on.

09:41   10         Their stated purpose was that we need this

09:42   11   limitation to distinguish between these two.  The fact is

09:42   12   you don't.  For instance, we can show you the Tezel

09:42   13   reference.  This is at page 305 of Tezel that the Court

09:42   14   cites in its tentative order.  For instance, it says, "The

09:42   15   total HA concentration consists of insoluble HA and soluble

09:42   16   free HA."

09:42   17         So, again, the distinction between HA species --

09:42   18   there are two species in the total HA -- the total

09:42   19   composition:  The insoluble HA, the cross-linked HA; and the

09:42   20   soluble-free HA.  But it's not based on the degree of

09:42   21   cross-linking.

09:42   22         Then continuing, at the bottom it talks about "The

09:42   23   fluid component contains unmodified and modified soluble HA

09:43   24   that is generated during the manufacturing process when the

09:43   25   HA fragments are formed as a side product of the chemical

09:43  1   modification."  And it continues at the very end of this

09:43  2   section:  "It is important to understand how much of the

09:43  3   filler's concentration is gel or cross-linked HA and how

09:43  4   much is soluble fluid HA."  So solubility or insolubility is

09:43  5   the distinction between free HA and cross-linked HA, and

09:43  6   it's not based on the degree of cross-linking.  They haven't

09:43  7   shown you that.  They can't show you that.

09:43  8         In fact, Your Honor, again to put this in

09:43  9   perspective, why are they still arguing this?  Their product

09:43  10  has insoluble cross-linked HA particles with a degree of

09:44  11  cross-linking of less than 2 percent.  If you were to impose

09:44  12  this limitation, there would be a summary judgment motion

09:44  13  they say they don't infringe.

09:44  14        The problem is this.  They started off this whole

09:44  15  discussion with we have got this problem.  We have got free

09:44  16  HA.  We have got cross-linked HA.  It has to fall into one

09:44  17  of those two camps, and we can't tell based on Allergan's

09:44  18  constructions.  We could debate that, but there is no need

09:44  19  to.  They have now created the opposite problem because they

09:44  20  have got undisputed -- this is based on public documents --

09:44  21  cross-linked HA particles less than 2 percent.  So it's not

09:44  22  free HA because it's insoluble.  Agreed upon definition.

09:45  23  It's not cross-linked HA.  Why not?  Because it's less than

09:45  24  2 percent.  So now they have created this other undefined HA

09:45  25  category that's no longer free HA.  It's no longer

09:45    1    cross-linked HA.  It's something else.

09:45    2         So the entire premise of their argument that you

09:45    3    have got to add the 2 percent in order to make this bright

09:45    4    line between free HA and cross-linked HA falls apart.  The

09:45    5    bright line is the water solubility.  This 2 percent is just

09:45    6    an attempt to manufacture an infringement defense.

09:45    7         Again, with the description in the title, the

09:45    8    abstract, the background of the invention, the summary of

09:45    9    the invention, the claim language, the lack of discussion of

09:45   10    this in the specification, the lack of -- it was mentioned

09:45   11    one time -- the lack of it in the claims, there is just

09:45   12    really no way that someone can come away with this and say

09:46   13    this is really the invention.  You have to limit the

09:46   14    invention to 2 to 20.

09:46   15         So we think that it doesn't rise to the level of a

09:46   16    clear disclaimer, which is what it has to have.  There is no

09:46   17    manifest words of exclusion here where they say our

09:46   18    invention is limited to 2 to 20, and if you are outside that

09:46   19    range, we don't cover it.  Again, that's not what this was

09:46   20    about.  The invention was about adding Lidocaine and getting

09:46   21    Lidocaine into these gels.  That's what they taught.  That's

09:46   22    the novel aspect.

09:46   23         THE COURT:  Thank you.

09:46   24         To close, sir, how much time do you need?

09:46   25         MR. CAVANAUGH:  Three minutes.

09:46  1          THE COURT:  I appreciate the argument of both

09:46  2  counsel.  It's very helpful.

09:46  3          MR. CAVANAUGH:  Your Honor, we do think this is an

09:46  4  aspect of a novel invention, not standing alone 2 to

09:46  5  20 percent, but what counsel never really squarely addressed

09:46  6  is what's the purpose of that statement in column 9:  "The

09:46  7  degree of cross-linking in a HA component of the present

09:47  8  compositions is at least 2 percent and is up to about

09:47  9  20 percent"?

09:47  10         What is that teaching a person of ordinary skill

09:47  11  in the art when they read this?  You look at the summary.

09:47  12  They make it clear that cross-linking is an aspect of

09:47  13  achieving a functional useful product.  When you read this,

09:47  14  you say, well, how do I achieve that?  It's between 2 and

09:47  15  20 percent.

09:47  16         In column 3 that they point to --

09:47  17         THE COURT:  Do you think the specification in that

09:47  18  range would be patentable?

09:47  19         MR. CAVANAUGH:  I don't know the answer to that

09:47  20  standing alone.  It might not be.  I don't think that their

09:47  21  Lidocaine addition is patentable because there was Lidocaine

09:47  22  in the prior art.  Frankly, from our position, we don't

09:47  23  think any of this is patentable.  Whether standing alone it

09:47  24  would be, I don't know how precisely the claims would be

09:48  25  phrased for it to try to be patentable, but it could

09:48   1   certainly be an aspect of a novel invention.

09:48   2          Because they are seeking to --

09:48   3          THE COURT:  2 to 20 might be the range that

09:48   4   provides both stability and the ability to use with a

09:48   5   smaller needle.

09:48   6          MR. CAVANAUGH:  It's sufficiently viscous that

09:48   7   it's a useable product.  The purpose of this range of

09:48   8   cross-linking is that we end up with something that is

09:48   9   functional, that's usable.  They are claiming that

09:48   10  cross-linking is important to this process.  In the summary,

09:48   11  they talk about the cross-linking process, and then in

09:48   12  column 3, they say less than 5 percent, about 2 percent.

09:49   13         I keep coming back to that dependent claim that

09:49   14  says about 2 percent, and the two prior ones said less than

09:49   15  5, less than 6, and then they stop at about 2 percent.

09:49   16         THE COURT:  Is 1 percent less than 5 percent?

09:49   17         MR. CAVANAUGH:  1 percent is less.

09:49   18         THE COURT:  Does that act against your position?

09:49   19         MR. CAVANAUGH:  Not when you read column 9.  They

09:49   20  describe the broad range, and then they give embodiments

09:49   21  that are less than 5 percent, less than 6 percent.  There is

09:49   22  not a single example of 1 percent throughout the

09:49   23  specification.  In column 3 and in column 9 and in dependent

09:49   24  claim 7, it's always 2 percent.

09:49   25         THE COURT:  If I were to send you a settlement

09:49  1    letter and said my client is willing to pay you something

09:50  2    less than $100,000, do you ever assume that can include $10,

09:50  3    or would you assume I am willing to pay --

09:50  4                MR. CAVANAUGH:  I wouldn't.

09:50  5                THE COURT:  That's an argument in your favor.

09:50  6                MR. CAVANAUGH:  It is.

09:50  7                THE COURT:  Less than 5 percent -- if I said my

09:50  8    offer is something less than $100,000, you would probably

09:50  9    assume it's $99,000?

09:50  10               MR. CAVANAUGH:  The point is context matters.  My

09:50  11   point is when you look at the specification -- the one

09:50  12   sentence here is our range is 2 to 20.  The next sentence

09:50  13   says some embodiments are less than 5 percent.  I wouldn't

09:50  14   say, oh, you know what that means.  That means I can use a

09:50  15   .0001 percent cross-linking agent, and I am still within the

09:50  16   scope of this invention.  You wouldn't.  That's why context

09:50  17   matters.  In the context here where they are talking about

09:50  18   less than 5 percent, less than 6 percent, it comes after

09:51  19   that sentence which describes the range.

09:51  20               THE COURT:  To expand or maybe more focus the

09:51  21   hypothetical, if I said will give you something less than

09:51  22   five bucks for your hamburger, I don't think you would take

09:51  23   a buck.

09:51  24               MR. CAVANAUGH:  If I reached into my pocket and I

09:51  25   had a quarter, I wouldn't think that that's the range you

09:51  1  were talking about.

09:51  2          THE COURT:  Okay.  So how much will you give me

09:51  3  for a hamburger today?  Why is the language there?

09:51  4          MR. KANE:  Well, because again that is part of the

09:51  5  range that they looked at.  There is no doubt about that.

09:52  6          What counsel is missing, though -- let's look at

09:52  7  column 9 because he is leaving out an intermediate sentence.

09:52  8  The first sentence says about 2 to 20.  He likes that

09:52  9  sentence.  The next sentence says between 4 and 12.  So they

09:52  10  put a lower limit there.  They said 2 to 20, 4 to 12.  You

09:52  11  have seen patents, Your Honor.  That's very common for

09:52  12  patent owners that draft these things, 2 to 20, 4 to 12,

09:52  13  preferably 6.  That's very standard.

09:52  14          Here it says 2 to 20.  The next line says 4 to 12.

09:52  15  The next says less than 5.  So where is the lower limit?

09:52  16  They knew how to put a lower limit in.  They did it right

09:52  17  before.  They said 4 to 12.  If they wanted to say 2 to 5,

09:52  18  they would have had said 2 to 5.  They didn't.  Context is

09:52  19  important.  That's the point I would make, Your Honor.  When

09:53  20  they wanted the claim ranges or to talk about ranges, they

09:53  21  did, and they didn't do it on less than 5.

09:53  22          THE COURT:  Okay.

09:53  23          MR. CAVANAUGH:  Your Honor, as to the sentence

09:53  24  counsel just quoted, he omitted the first three words that

09:53  25  starts that sentence, "In some embodiments, the degree of

09:53  1    cross-linking is about 4 to 12," which follows the opening

09:53  2    sentence, which is "the degree of cross-linking in HA

09:53  3    component of the present compositions."  Not some

09:53  4    embodiments, some limitations.  Start with the range.  Then

09:53  5    provide some embodiments.

09:54  6         Your Honor asked both of us the question where is

09:54  7    the inconsistency?  Did counsel come up and say, well, no,

09:54  8    there is an example there where they are using 1 percent or

09:54  9    5 percent or 22 percent?  None.  None.  That's why we say

09:54  10   the specification is consistent, Your Honor.

09:54  11        THE COURT:  Okay.  Surrebuttal.

09:54  12        MR. KANE:  Your Honor, again, it's not

09:54  13   inconsistent as we said before.  Again, if they wanted to

09:54  14   say 2 to 5, they could have said 2 to 5.  They didn't say

09:54  15   it.

09:54  16        THE COURT:  Okay.  Counsel is the matter

09:54  17   submitted?

09:54  18        MR. CAVANAUGH:  Yes, Your Honor.

09:54  19        MR. KANE:  Yes, Your Honor.

09:54  20        THE COURT:  I will take it under submission.  You

09:54  21   can expect an order probably later today if I check out a

09:54  22   few things I need to check out.

09:54  23        Where are we in the case?

09:54  24        MR. CAVANAUGH:  We are in the process of document

09:55  25   production.

09:55   1        THE COURT:  Where are you in settlement

09:55   2   discussions?

09:55   3        MR. CAVANAUGH:  I know there have been some

09:55   4   discussions between in-house attorneys, and I got an e-mail

09:55   5   today that I think there will be some further discussions.

09:55   6   That's really where we are.

09:55   7        THE COURT:  Okay.  On the way out, Counsel, just

09:55   8   raise the issue of settlement and maybe talk about what the

09:55   9   future would look like.  I recently had a case come up for

09:55   10  trial and was just about ready to call a jury, and they

09:55   11  confessed they had not appeared before a third party in any

09:55   12  of their settlement discussions.  You are required to appear

09:55   13  before a third party, and there are a few options available

09:55   14  to you.  I don't know if you have thought about that, a

09:55   15  private company, a magistrate judge, or our panel of

09:55   16  attorneys.

09:55   17       Have you decided amongst yourselves which of those

09:56   18  would be preferred?

09:56   19       MS. FLANAGAN:  I believe we selected private

09:56   20  mediation in our scheduling order.

09:56   21       THE COURT:  That's what I recall, too.  So talk

09:56   22  about how you might select someone as a private mediator.

09:56   23  We have got some pretty good patent guys.

09:56   24       Anything else?

09:56   25       MR. CAVANAUGH:  No, Your Honor.

09:56    1              THE COURT:  Thanks for the argument.  It was very

09:56    2      helpful.

09:56    3              (Whereupon, the proceedings were concluded.)

09:56    4                              *     *     *

09:56    5

09:56    6

09:56    7

09:56    8

09:56    9

09:56   10

09:56   11

09:56   12

09:56   13

09:56   14

09:56   15

09:56   16

09:56   17

09:56   18

09:56   19

09:56   20

09:56   21

09:56   22

09:56   23

09:56   24

09:56   25

```
09:56   1
09:56   2
09:56   3
09:56   4                        CERTIFICATE
09:56   5
09:56   6         I hereby certify that pursuant to Section 753,
09:56   7    Title 28, United States Code, the foregoing is a true and
09:56   8    correct transcript of the stenographically reported
09:56   9    proceedings held in the above-entitled matter and that the
09:56   10   transcript page format is in conformance with the
09:56   11   regulations of the Judicial Conference of the United States.
09:56   12
09:56   13   Date:  August 14, 2014
09:56   14
09:56   15
09:56                          /s/   Sharon A. Seffens  8/14/14
09:56   16                     _____
09:56
09:56   17                     SHARON A. SEFFENS, U.S. COURT REPORTER
        18
        19
        20
        21
        22
        23
        24
        25
```

## $

$10 [1] 29/1
$100,000 [2] 29/2 29/8
$99,000 [1] 29/9

## '

'475 [4] 5/3 5/6 12/2 20/25

## .

.0001 [1] 29/15
.0001 percent [1] 29/15

## /

/s [1] 34/15

## 0

0855 [1] 2/16
0870 [1] 1/21

## 1

1 percent [5] 16/18 28/16
 28/17 28/22 31/8
1-1053 [1] 1/20
10036-6710 [1] 2/19
1053 [1] 1/20
11 [1] 7/13
1133 [1] 2/18
12 [8] 1/17 3/1 30/9 30/10
 30/12 30/14 30/17 31/1
12 percent [1] 6/7
12390 [1] 2/7
13 [2] 21/22 22/7
14 [5] 7/19 21/22 22/7 34/13
 34/15
16 [1] 6/18
17 [1] 17/3
17th [1] 2/10
18 [1] 7/14
19899 [1] 2/11

## 2

2 percent [1] 5/24
20 [26] 4/4 4/6 4/19 4/20 6/1
 7/3 7/9 7/13 7/22 11/17 14/15
 14/19 15/2 15/20 17/12 18/15
 19/4 21/10 26/14 26/18 28/3
 29/12 30/8 30/10 30/12 30/4
20 percent [10] 5/24 6/15 8/11
 9/8 17/17 18/6 19/5 27/5 27/9
 27/15
2014 [3] 1/17 3/1 34/13
212 [1] 2/19
213 [1] 2/16
22 percent [1] 31/9
222 [1] 2/10
232-0855 [1] 2/16
25 [1] 15/25
2502 [1] 2/5
27 [3] 8/14 8/15 18/7
2793 [1] 2/19
28 [1] 34/7
29 [2] 7/13 12/22

## 3

3 percent [1] 18/25
30 [2] 5/9 5/20
302 [1] 2/11
305 [1] 24/13
3200 [1] 2/4
336-2793 [1] 2/19
337-2502 [1] 2/5
34 [1] 5/9

## 4

41 [1] 1/20
42 [1] 13/22
4332 [1] 2/8
4th [1] 1/20

## 5

5 percent [2] 6/5 6/6
50 [1] 14/17
523 [1] 2/15
543-0870 [1] 1/21
55402 [1] 2/5

## 6

6 percent [1] 6/4
60 [1] 2/4
612 [1] 2/5
63 [1] 16/11
64 [1] 16/11
6710 [1] 2/19
678-4332 [1] 2/8

## 7

714 [1] 1/21
716 [1] 2/15
753 [1] 34/6
778-8472 [1] 2/11

## 8

8 percent [1] 6/7
8/14/14 [1] 34/15
8472 [1] 2/11
858 [1] 2/8

## 9

90014 [1] 2/15
92130 [1] 2/8
92701 [1] 1/20
9:04 [1] 3/1

## A

A.M [1] 3/1
ability [1] 28/4
able [2] 14/21 14/22
about [67]
above [1] 34/9
above-entitled [1] 34/9
absolutely [1] 17/15
abstract [8] 8/6 12/7 12/11
 20/23 20/24 21/1 21/8 26/8
acceptable [2] 12/14 13/16
accomplish [1] 4/16
account [1] 22/19
achieve [1] 27/14
achieving [1] 27/13
acid [3] 12/4 12/15 13/16
acid-based [2] 12/4 12/15
acids [1] 12/13
act [1] 28/18
actually [3] 18/17 18/19 18/23
add [2] 14/22 26/3
added [1] 9/16
adding [3] 12/5 17/6 26/20
addition [2] 9/10 27/21
addressed [1] 27/5
adopt [1] 8/16
AESTHETICS [2] 1/11 3/3
affect [1] 14/11
after [1] 29/18
AG [2] 1/10 3/2
again [19] 9/22 13/9 13/13
 13/20 15/13 16/10 16/21 17/19
 18/11 20/3 20/7 22/7 24/17

25/8 26/7 26/19 30/4 31/12
 31/13
against [5] 22/3 22/5 22/6
 22/13 28/18
agent [5] 12/16 12/19 13/19
 13/23 29/15
agents [3] 12/24 12/25 13/9
agree [2] 3/25 5/5
Agreed [1] 25/22
ahead [2] 5/6 19/13
al [4] 1/9 1/11 3/3 3/3
all [22] 3/15 3/15 3/16 4/20
 5/19 7/9 11/3 11/7 12/18 14/20
 14/20 15/9 17/6 17/6 17/9
 17/14 19/9 20/8 20/11 20/16
 20/17 20/23
ALLERGAN [5] 1/9 3/2 4/16
 22/14 23/12
Allergan's [2] 19/7 25/17
allergic [1] 13/7
alone [4] 19/14 27/4 27/20
 27/23
also [6] 3/18 8/13 18/11 18/12
 20/9 20/24
alternative [4] 21/18 22/8
 22/15 22/22
always [4] 4/24 7/9 24/8 28/24
am [7] 3/17 3/18 10/13 12/8
 17/25 29/3 29/15
Americas [1] 2/18
amongst [1] 32/17
amount [3] 12/16 13/18 17/9
Ana [3] 1/16 1/20 3/1
analysis [1] 20/12
and the [1] 28/4
ANDREW [1] 1/7
anesthetic [6] 12/16 12/19
 12/25 13/9 13/18 13/23
Angeles [1] 2/15
answer [2] 11/1 27/19
any [6] 3/19 4/25 13/10 18/19
 27/23 32/11
anyone [1] 24/6
anything [3] 21/1 21/3 32/24
anywhere [1] 18/7
apart [1] 26/4
apologize [1] 17/2
appear [2] 18/7 32/12
appearances [2] 2/1 3/5
appeared [1] 32/11
appears [1] 3/21
applicant [2] 14/16 20/18
applicants [2] 21/6 21/7
applications [1] 15/10
applied [4] 7/5 7/7 11/17 15/6
appreciate [1] 27/1
are [55]
aren't [1] 18/2
argue [1] 18/19
argued [2] 8/25 9/18
arguing [4] 17/22 22/2 22/3
 25/9
argument [13] 4/2 10/4 11/10
 18/16 21/18 21/19 22/8 22/17
 23/9 26/2 27/1 29/5 33/1
art [8] 10/10 11/3 19/9 19/16
 23/10 24/4 27/11 27/22
as [25] 4/8 4/13 5/1 6/11 9/14
 9/22 10/1 10/20 11/4 12/2
 12/25 13/5 15/11 17/17 18/5
 19/17 21/17 22/13 23/7 23/10
 23/12 24/25 30/23 31/13 32/22
ask [2] 12/8 22/14
asked [2] 15/5 31/6

## A

aspect [3]  12/12 14/13 19/10
 19/13 26/22 27/4 27/12 28/1
assume [3]  29/2 29/3 29/9
assume I [1]  29/3
Astrazeneca [13]  8/1 8/2 8/7
 8/19 8/21 8/25 9/10 9/22 10/5
 19/25 20/24 20/25 21/5
attempt [1]  26/6
attempting [1]  12/23
attorneys [2]  32/4 32/16
August [3]  1/17 3/1 34/13
available [1]  32/13
Avenue [2]  2/10 2/18
away [1]  26/12

## B

back [3]  4/21 20/19 28/13
background [4]  12/21 13/1 17/5
 26/8
based [18]  3/21 8/2 8/23 9/16
 10/5 10/5 12/4 12/13 12/15
 13/2 13/15 13/24 24/7 24/8
 24/20 25/6 25/17 25/20
be [25]  5/2 7/6 8/16 9/3 9/20
 9/23 10/20 10/11 11/21 16/25
 18/21 19/3 19/5 19/9 19/14
 25/12 27/18 27/20 27/24 27/24
 27/25 28/1 28/3 32/5 32/18
because [20]  5/3 7/8 8/19 9/1
 9/21 9/25 11/3 11/4 11/10
 19/15 21/5 22/10 23/6 25/19
 25/22 25/23 27/21 28/2 30/4
 30/7
been [4]  10/11 12/24 19/4 32/3
before [7]  3/18 14/15 22/22
 30/17 31/13 32/11 32/13
beginning [3]  15/13 15/17 17/7
behalf [2]  3/12 3/14
being [8]  6/9 10/4 14/5 14/21
 14/22 18/1 19/13 19/19
believe [6]  4/9 4/12 5/10
 11/19 11/22 32/19
believes [1]  3/24
BELKNAP [1]  2/18
below [1]  18/25
besides [1]  21/16
between [9]  14/15 24/6 24/11
 24/17 25/5 26/4 27/14 30/9
 32/4
Bill [1]  3/11
biocompatible [1]  13/7
body [2]  8/6 9/12
both [5]  8/20 23/3 27/1 28/4
 31/6
bottom [1]  24/22
bound [2]  6/9 11/10
boundary [1]  11/14
brief [3]  21/22 22/7 22/12
briefing [3]  4/15 21/17 23/12
briefly [1]  3/20
briefs [1]  19/21
bright [2]  26/3 26/5
broad [2]  20/23 28/20
buck [1]  29/23
bucks [1]  29/22

## C

CA [3]  1/20 2/8 2/15
Calais [1]  23/15
CALIFORNIA [3]  1/5 1/16 3/1
call [1]  32/10
calling [3]  18/23 19/2 19/2

## Camino
Camino [1]  2/7
camps [2]  22/3 25/17
can [11]  14/7 20/20 24/12 26/21
 29/2 29/14 31/21
can't [7]  9/3 10/24 16/16 19/9
 20/21 25/7 25/17
case [21]  3/23 8/1 8/19 8/20
 9/10 9/11 9/22 10/18 17/17
 17/18 17/18 17/19 19/21 19/22
 19/23 19/25 20/8 20/9 21/7
 31/23 32/9
cases [4]  19/18 19/20 20/9
 20/22
categories [3]  20/10 20/15
 20/20
category [2]  20/11 25/25
cause [1]  13/7
CAVANAUGH [2]  2/17 3/12
CENTRAL [1]  1/5
certain [3]  6/10 12/24 20/10
certainly [4]  3/21 15/1 16/8
 28/1
CERTIFICATE [1]  34/4
CERTIFIED [1]  1/8
certify [1]  34/6
chance [1]  4/18
characteristics [1]  14/22
check [2]  31/21 31/22
chemical [1]  24/25
chemicals [2]  20/3 20/4
chose [1]  20/13
Circuit [6]  8/20 9/2 10/17
 10/22 17/19 21/4
Circuit's [1]  20/12
cite [2]  10/24 11/3
cited [3]  19/20 23/9 24/1
cites [1]  24/14
citing [2]  23/20 23/22
claim [35]
claiming [2]  20/10 28/9
claims [14]  6/10 6/13 6/16
 6/19 7/6 11/9 11/18 11/24
 18/11 18/13 18/16 22/23 26/11
 27/24
claims 5 [1]  18/11
clear [18]  5/8 5/21 7/12 7/23
 9/4 9/5 9/24 10/6 10/11 11/5
 11/8 16/25 17/17 17/18 17/20
 17/22 26/16 27/12
clearly [1]  7/18
clerk [1]  22/25
client [3]  22/5 22/6 29/1
close [5]  5/11 26/24
Code [1]  34/7
column [21]  5/9 5/12 5/20 6/18
 7/13 7/14 7/19 12/22 15/25
 16/10 16/11 16/15 16/21 21/11
 27/6 27/16 28/12 28/19 28/23
 28/23 30/7
come [8]  11/1 11/8 16/7 18/13
 20/18 26/12 31/7 32/9
comes [1]  29/18
coming [1]  28/13
common [1]  30/11
company [1]  32/15
Comparing [1]  20/25
completely [3]  18/17 20/22
 22/17
component [6]  5/23 16/11 16/22
 24/23 27/7 31/3
composition [7]  6/14 6/23 7/11
 7/17 9/7 17/3 24/19
compositions [9]  5/23 10/7
 12/15 13/2 13/22 13/25 14/2

## 27/8
27/8 31/3
concentration [2]  24/15 25/3
concluded [2]  9/8 33/3
conclusion [1]  5/10
Conference [1]  34/11
conferred [1]  3/20
confessed [1]  32/11
confirm [3]  18/16 18/19 18/20
confirmed [1]  11/13
confirms [1]  11/14
conflict [1]  18/5
conformance [1]  34/10
consistency [1]  7/20
consistent [4]  13/21 19/24
 20/25 31/10
consistently [7]  7/5 7/8 11/17
 11/23 15/6 17/16 18/1
consists [1]  24/15
construction [5]  4/2 8/17 9/14
 22/20 23/14
constructions [2]  4/14 25/18
construe [1]  22/23
construed [1]  10/20
contains [1]  24/23
contending [1]  5/21
contest [1]  23/13
contesting [2]  21/21 21/25
context [6]  5/25 7/17 29/10
 29/16 29/17 30/18
continue [3]  12/20 14/24 16/10
continues [5]  13/1 13/20 13/25
 16/2 25/1
continuing [1]  24/22
conventional [1]  13/24
conversation [1]  22/25
correct [3]  15/7 15/8 34/8
could [6]  9/23 10/19 19/14
 25/18 27/25 31/14
counsel [10]  2/1 4/8 19/25
 27/2 27/5 30/6 30/24 31/7
 31/16 32/7
counsel's [1]  18/15
couple [1]  20/14
course [1]  18/24
court [33]  1/4 3/22 4/3 4/18
 5/3 5/9 6/8 6/10 7/15 7/24
 8/13 9/14 9/23 10/9 12/2 17/17
 18/3 18/5 18/11 19/17 19/22
 19/24 20/1 20/5 20/20 20/24
 21/18 21/20 21/24 23/4 24/9
 24/13 34/16
Court's [1]  3/21
Courthouse [1]  1/19
cover [2]  19/1 26/19
covers [5]  16/13 16/14 16/14
 16/18 19/1
created [2]  25/19 25/24
cross [56]
cross-link [2]  22/9 23/10
cross-linked [14]  22/11 23/9
 23/13 24/5 24/7 24/19 25/3
 25/5 25/10 25/16 25/21 25/23
 26/1 26/4
cross-linking [39]

## D

Date [1]  34/13
DE [1]  2/11
dealt [1]  23/2
Debacher [1]  23/16
debate [1]  25/18
decide [1]  22/10
decided [1]  32/11
decision [2]  6/2 10/6

## D

**defendants** [9]  1/12 2/13 3/10
3/12 3/14 4/19 16/6 21/17
23/23
**defense** [2]  21/25 26/6
**define** [1]  7/23
**defined** [2]  6/15 9/14
**defines** [1]  7/2
**definition** [3]  8/16 9/19 25/22
**degree** [33]  4/4 5/22 6/3 6/5
6/15 6/23 7/9 12/17 13/10
13/10 14/2 14/9 14/12 14/14
14/17 14/17 16/1 16/12 16/23
17/4 17/6 17/10 17/11 21/1
21/3 24/7 24/8 24/20 25/6
25/10 27/7 30/25 31/2
**Delaware** [1]  2/10
**deleted** [2]  10/19 10/21
**deletion** [1]  10/23
**departs** [1]  6/24
**dependent** [9]  6/13 6/16 6/18
6/22 11/9 11/11 11/13 28/13
28/23
**deposition** [1]  5/18
**dermal** [2]  12/12 13/15
**describe** [3]  3/17 23/10 28/20
**described** [3]  13/6 18/10 20/2
**describes** [1]  29/19
**describing** [1]  13/22
**description** [7]  7/16 8/5 13/9
13/13 13/14 14/1 26/7
**desirable** [1]  14/21
**did** [5]  4/8 22/3 30/16 30/21
31/7
**didn't** [8]  10/15 10/25 20/11
23/12 23/14 30/18 30/21 31/14
**Diego** [1]  2/8
**different** [3]  7/16 20/15 20/22
**differentiation** [8]  8/14 8/21
8/25 9/3 9/9 9/20 9/23 10/3
**differently** [1]  11/12
**disagreed** [2]  9/2 9/23
**disavow** [1]  17/22
**disclaimer** [1]  26/16
**Disclosed** [1]  12/11
**disclosure** [2]  14/4 21/13
**discovery** [1]  19/3
**discuss** [2]  4/9 8/12
**discussion** [6]  14/2 17/5 17/8
18/14 25/15 26/9
**discussions** [4]  32/2 32/4 32/5
32/12
**distinction** [3]  24/6 24/17
25/5
**distinguish** [3]  10/10 23/8
24/11
**distinguishing** [1]  19/15
**DISTRICT** [3]  1/4 1/5 9/14
**DIVISION** [1]  1/6
**do** [16]  3/18 4/15 11/22 12/9
13/6 14/8 19/5 22/15 22/19
23/19 26/24 27/3 27/14 27/17
29/2 30/21
**document** [1]  31/24
**documents** [1]  25/20
**does** [5]  6/21 11/8 14/11 19/12
28/18
**doesn't** [10]  11/1 14/11 16/2
16/3 16/8 18/6 18/19 21/1 21/3
26/15
**doing** [1]  19/7
**don't** [20]  3/23 3/23 4/9 4/12

10/3 10/13 15/11 18/10 19/6
19/14 22/8 24/12 25/13 26/19
27/19 27/20 27/22 27/24 29/22
32/14
**DONALD** [2]  2/14 3/9
**done** [1]  11/4
**doubt** [1]  30/5
**down** [2]  11/8 16/10
**draft** [1]  30/12
**during** [5]  10/18 10/21 10/23
11/1 24/24

## E

**e-mail** [1]  32/4
**Edwards** [6]  8/19 9/11 9/18
10/5 10/18 10/19
**effective** [2]  12/15 13/18
**either** [1]  3/23
**El** [1]  2/7
**ELIZABETH** [2]  2/9 3/7
**elmo** [1]  12/9
**else** [3]  18/7 26/1 32/24
**elsewhere** [1]  18/10
**embodiments** [10]  6/3 6/5 7/12
7/13 7/14 28/20 29/13 30/25
31/4 31/5
**end** [2]  25/1 28/8
**ends** [1]  10/3
**enhanced** [1]  13/24
**entire** [5]  12/1 14/4 20/7
21/13 26/2
**entitled** [1]  34/9
**essentially** [1]  9/21
**et** [4]  1/9 1/11 3/3 3/3
**Even** [1]  9/15
**ever** [3]  18/6 23/12 29/2
**evidence** [1]  18/4
**example** [16]  6/2 6/4 6/6 7/12
7/18 9/9 10/18 12/12 12/16
12/25 13/15 13/25 16/2 16/4
28/22 31/8
**examples** [3]  7/10 8/12 13/17
**except** [1]  18/7
**exceptions** [1]  17/20
**exclusion** [3]  17/23 18/1 26/17
**Exhibit** [4]  5/17 23/16 23/16
24/2
**expand** [1]  29/20
**expect** [1]  31/21
**expected** [1]  18/9

## F

**fact** [4]  10/25 18/13 24/11
25/8
**factor** [1]  10/16
**facts** [1]  20/8
**fall** [2]  6/1 25/16
**falls** [1]  26/4
**favor** [2]  21/25 29/5
**feature** [1]  19/15
**Federal** [6]  8/20 9/2 10/17
10/22 17/19 20/12
**fell** [2]  19/8 19/8
**few** [2]  31/22 32/13
**filler** [3]  6/22 13/2 14/21
**filler's** [1]  25/3
**fillers** [8]  12/12 12/13 13/6
13/15 13/15 14/7 14/14 17/8
**final** [1]  24/1
**Finally** [1]  10/9
**finding** [1]  19/10
**first** [12]  6/13 8/1 12/11
13/13 14/6 20/1 20/5 20/5 21/2
21/2 30/8 30/24

**FISH** [3]  2/3 2/7 2/10
**five** [4]  15/13 15/21 29/15
29/22
**FLANAGAN** [2]  2/9 3/8
**Flanagan's** [1]  5/18
**Floor** [1]  2/10
**fluid** [2]  24/23 25/4
**focus** [4]  4/21 4/25 8/6 29/20
**focused** [1]  21/5
**follow** [3]  5/13 5/25 8/12
**following** [2]  7/1 8/23
**follows** [1]  31/1
**foregoing** [1]  34/7
**format** [1]  34/10
**formed** [1]  24/25
**forth** [1]  4/21
**forward** [1]  4/16
**found** [6]  4/5 8/2 9/23 14/18
19/22 20/5
**four** [5]  17/11 19/23 23/9
23/15 24/2
**fragments** [1]  24/25
**Frankly** [1]  27/22
**free** [10]  22/11 23/8 24/6
24/16 24/20 25/5 25/15 25/22
25/25 26/4
**front** [2]  21/5 21/8
**functional** [2]  27/13 28/9
**further** [1]  32/5
**future** [1]  32/9

## G

**GALANTER** [1]  2/14
**GARNER** [2]  2/6 3/7
**gather** [1]  5/15
**gave** [2]  5/9 24/2
**gel** [2]  12/19 25/3
**gels** [2]  12/4 26/21
**general** [1]  17/20
**generated** [1]  24/24
**get** [3]  5/5 17/21 20/20
**getting** [2]  14/10 26/20
**give** [5]  9/8 13/17 28/20 29/21
30/2
**given** [1]  24/5
**go** [4]  4/21 5/6 8/11 19/13
**going** [5]  12/8 14/5 18/20
20/15 20/16
**good** [7]  3/4 3/6 3/9 3/11 3/13
11/21 32/23
**got** [10]  20/23 21/14 23/18
25/15 25/15 25/16 25/20 26/3
32/4 32/23
**graft** [3]  9/13 9/14 9/16
**grafts** [4]  9/11 9/15 9/21 10/1
**graphics** [1]  5/4
**greater** [7]  6/6 16/3 16/4 16/8
16/9 18/22 18/22
**GUILFORD** [1]  1/7
**guys** [1]  32/23

## H

**HA** [53]
**HA-based** [2]  13/2 13/24
**had** [10]  10/1 14/14 19/16 20/2
22/22 22/25 29/25 30/18 32/9
32/11
**half** [1]  16/14
**hallway** [1]  4/9
**hamburger** [2]  29/22 30/3
**has** [18]  4/17 5/3 6/23 10/11
12/23 14/8 14/21 16/11 17/13
18/3 18/24 19/4 21/20 21/24
24/9 25/10 25/16 26/16

## H

have [49]
haven't [1]  25/6
having [1]  16/22
he [7]  6/24 7/12 7/13 11/13
  30/7 30/8 30/24
hear [2]  4/20 11/20
held [1]  34/9
helpful [4]  4/24 5/3 27/2 33/2
helps [1]  4/21
here [27]  8/10 10/6 10/7 10/25
  12/1 12/17 12/18 14/4 14/16
  15/16 17/10 17/22 18/2 18/3
  19/10 20/3 20/4 20/21 21/6
  21/8 21/9 21/16 23/1 26/17
  29/12 29/17 30/14
here's [2]  21/9 24/3
hereby [1]  34/6
herein [2]  12/11 13/6
his [1]  11/14
history [3]  10/22 11/1 19/18
Hold [2]  14/10 14/25
Honeywell [1]  19/21
Honor [43]
HONORABLE [1]  1/7
hope [1]  3/15
house [1]  32/4
how [13]  3/17 3/19 10/19 11/24
  14/6 25/2 25/3 26/24 27/14
  27/24 30/2 30/16 32/22
HOWARD [2]  2/17 3/14
hyaluronic [4]  12/3 12/13
  12/14 13/16
hypothetical [1]  29/21

## I

I'll [1]  5/5
I'm [4]  11/10 12/20 14/10
  23/22
identified [2]  8/4 23/15
identify [1]  12/22
illustrate [1]  23/23
illustrates [1]  7/19
important [8]  11/24 13/21
  14/18 18/8 19/19 25/2 28/10
  30/19
importantly [1]  6/17
impose [1]  25/11
in-house [1]  32/4
INC [4]  1/9 1/11 3/2 3/3
include [5]  12/15 13/8 22/8
  22/9 29/2
including [3]  12/4 13/17 13/23
inconsistencies [2]  15/13
  15/15
inconsistency [1]  31/7
inconsistent [6]  15/9 17/15
  18/12 18/17 22/17 31/13
incorporate [1]  12/24
independent [1]  6/14
infringe [1]  25/13
infringement [1]  26/6
inside [1]  9/18
insolubility [4]  21/19 22/1
  22/9 25/4
insoluble [8]  23/11 23/13
  23/24 24/5 24/15 24/19 25/10
  25/22
instance [6]  7/15 9/24 10/4
  15/17 24/12 24/14
instructive [2]  22/21 23/6
interesting [1]  4/6
interestingly [1]  20/1

intermediate [1]  30/7
interpretation [1]  18/5
interrelationship [1]  23/7
intraluminal [8]  9/15 9/16
  9/19 9/21 9/22 10/2 10/19
  10/20
intraluminally [1]  9/11
intrinsic [1]  18/4
introduced [1]  9/12
invented [1]  8/11
invention [50]
inventor [5]  6/21 7/11 7/15
  7/22 11/2
inventor when [1]  7/11
inventor's [1]  11/10
involving [1]  9/11
is [153]
is absolutely [1]  17/15
is context [1]  29/10
isn't [5]  8/8 8/15 8/17 9/1
  23/6
isolation [1]  21/13
issue [6]  3/22 4/2 4/4 4/22
  8/13 32/8
issues [1]  4/17
it [87]
it's [36]
It's calling [1]  19/2
its [6]  6/2 6/8 7/24 14/6 18/6
  24/14

## J

judge [2]  1/7 32/15
judges [2]  23/2 23/4
judgment [1]  25/12
Judicial [1]  34/11
jury [1]  32/10
just [15]  5/15 8/7 14/25 16/24
  18/2 18/12 18/14 20/22 23/5
  23/13 26/5 26/11 30/24 32/7
  32/10

## K

KANE [2]  2/3 3/7
keep [1]  28/13
kind [4]  13/10 14/6 18/20
  22/25
knew [1]  30/16
know [7]  5/17 12/8 27/19 27/24
  29/14 32/3 32/14
knows [1]  17/17

## L

lack [3]  26/9 26/10 26/11
lack of [1]  26/10
language [8]  5/13 7/1 9/17
  11/9 16/19 18/21 26/9 30/3
LARA [1]  2/6
last [1]  13/1
later [3]  20/18 21/11 31/11
Laura [1]  3/6
law [1]  17/17
lead [1]  11/21
lead-off [1]  11/21
least [6]  5/23 7/3 12/16 13/18
  13/23 27/8
leaving [1]  30/7
Lebreton [1]  24/2
legal [1]  21/16
less [37]
Let [1]  5/12
let's [5]  3/5 4/20 11/20 23/5
  30/6
letter [1]  29/1

level [1]  26/15
lexicography [2]  17/21 17/22
lidocaine [11]  12/20 12/24 12/6
  12/17 12/25 13/25 14/7 14/23
  17/7 17/9 26/20 26/21 27/21
  27/21
like [6]  4/3 4/17 4/18 18/23
  20/21 32/9
likes [1]  30/8
limit [6]  18/20 18/21 26/13
  30/10 30/15 30/16
limitation [5]  17/9 19/22 23/8
  24/11 25/12
limitations [1]  31/4
limited [9]  9/1 9/20 10/20
  11/2 17/16 17/16 18/9 20/19
  26/18
limited it [1]  11/2
limiting [2]  15/4 16/19
limits [1]  21/13
line [9]  5/20 7/14 12/22 13/22
  15/25 17/3 26/4 26/5 30/14
lines [3]  4/25 7/13 16/11
link [2]  22/9 23/10
linked [15]  22/11 23/9 23/13
  23/23 24/5 24/7 24/19 25/3
  25/5 25/10 25/16 25/23 25/23
  26/1 26/4
linking [39]
little [1]  22/25
LLP [2]  2/14 2/18
local [1]  13/8
longer [2]  25/25 25/25
look [16]  6/18 6/18 8/1 8/19
  11/3 12/1 12/7 12/10 15/24
  19/20 20/8 23/5 27/11 29/11
  30/6 32/9
looked [2]  15/3 30/5
Los [1]  2/15
lots [1]  19/8
lower [7]  6/9 11/14 18/20
  18/21 30/10 30/15 30/16

## M

magistrate [1]  32/15
mail [1]  32/4
maintain [1]  14/23
make [4]  14/6 26/3 27/12 30/19
makes [2]  11/5 24/6
making [3]  13/3 13/4 13/5
manifest [3]  17/23 18/1 26/17
manufacture [2]  22/16 26/6
manufacturing [1]  24/24
material [2]  10/22 10/24
matter [2]  31/16 34/9
matters [2]  29/10 29/17
may [1]  21/18
maybe [2]  29/20 32/8
me [5]  3/7 3/18 5/12 22/3 30/2
mean [2]  4/11 10/16
meaning [2]  17/21 17/23
means [2]  29/14 29/14
mediation [1]  32/20
mediator [1]  32/22
MEDICIS [2]  1/11 3/3
mention [5]  15/2 16/13 17/13
  21/1 21/3
mentioned [3]  19/25 21/10
  26/10
methods [1]  13/3
MICHAEL [2]  2/3 3/7
might [4]  11/21 27/20 28/3
  32/22
Minneapolis [1]  2/5

**M**

minute [1]   16/20
minutes [1]   26/25
missing [1]   30/6
MN [1]   2/5
modification [1]   25/1
modified [1]   24/23
moment [2]   5/15 14/25
more [3]   6/17 13/8 29/20
morning [5]   3/4 3/6 3/9 3/11
 3/13
most [1]   4/5
motion [1]   25/12
move [2]   4/16 13/12
Ms [1]   5/17
much [4]   25/2 25/4 26/24 30/2
my [9]   8/10 10/7 14/19 19/12
 22/25 29/1 29/7 29/10 29/24

**N**

necessarily [2]   6/9 8/9
necessary [6]   3/24 4/10 4/13
 5/4 23/8 23/14
need [5]   23/7 24/10 25/18
 26/24 31/22
needle [1]   28/5
never [3]   18/7 21/10 27/5
new [2]   2/19 19/11
next [4]   29/12 30/9 30/14
 30/15
no [28]   4/17 5/4 8/18 9/3
 10/15 13/9 14/2 15/6 15/11
 16/13 16/19 17/5 17/9 17/13
 18/14 20/19 20/19 20/19 20/21
 23/22 25/18 25/25 25/25 26/12
 26/16 30/5 31/7 32/25
none [3]   17/12 31/9 31/9
noninfringement [1]   22/17
NORRIS [3]   2/14 2/14 3/10
not [41]
noted [10]   6/8 6/10 10/9 18/3
 18/5 18/11 19/17 20/1 20/24
 23/12
notes [3]   7/15 7/24 8/13
nothing [6]   12/17 12/18 14/8
 14/15 19/17 20/21
noting [1]   5/10
novel [7]   14/13 14/13 19/10
 19/13 26/22 27/4 28/1
now [9]   6/2 6/8 7/24 21/12
 21/20 22/22 23/9 25/19 25/24
number [1]   5/10
NY [1]   2/19

**O**

objective [1]   13/2
obviously [2]   4/18 20/9
off [2]   11/21 25/14
offer [1]   29/8
often [1]   11/24
oh [1]   29/14
Okay [7]   11/20 16/20 30/2
 30/22 31/11 31/16 32/7
omitted [1]   30/24
once [2]   7/25 8/7
one [23]   4/2 4/5 4/22 7/15 8/4
 10/21 12/14 12/16 13/8 13/18
 13/23 14/25 15/21 16/14 17/12
 19/21 20/16 20/16 20/17 21/12
 25/16 26/11 29/11
One percent [1]   15/21
one-half [1]   16/14
ones [1]   28/14

only [6]   4/2 7/8 7/25 9/15
 17/20 19/1
open [1]   3/18
opening [3]   21/22 22/6 31/1
opinion [1]   7/24
opposite [1]   25/19
options [1]   32/13
oral [1]   4/1
order [5]   18/6 24/14 26/3
 31/21 32/20
ordinary [1]   27/10
other [8]   6/5 7/14 14/16 14/17
 18/4 20/20 21/16 25/24
others [1]   11/12
our [16]   4/1 4/14 8/25 9/20
 20/3 20/17 20/18 21/6 21/10
 22/6 22/6 26/17 27/22 29/12
 32/15 32/20
out [13]   3/16 6/1 14/18 18/13
 18/23 19/2 19/2 19/16 30/7
 31/21 31/22 32/7
outside [2]   15/15 26/18
over [1]   22/25
override [2]   9/3 9/24
owners [1]   30/12

**P**

P.C [3]   2/3 2/7 2/10
page [2]   24/13 34/10
pages [2]   21/22 22/7
panel [1]   32/15
paragraph [2]   13/1 21/2
part [3]   19/13 20/12 30/4
particles [2]   25/10 25/21
particularly [1]   10/23
parties [2]   3/18 21/20
party [2]   32/12 32/13
passages [1]   4/25
patent [18]   5/3 5/6 5/16 9/25
 12/2 12/3 12/20 12/23 15/14
 15/18 20/7 20/25 21/4 21/11
 23/18 23/21 30/12 32/23
patentable [6]   19/3 19/5 27/18
 27/21 27/23 27/25
patentee [3]   8/21 9/25 10/4
patents [1]   30/11
patients [1]   13/7
pattern [1]   7/19
PATTERSON [1]   2/18
pay [2]   29/1 29/3
people [3]   14/16 14/17 19/6
percent [76]
perhaps [1]   6/17
person [1]   27/10
perspective [2]   4/1 25/9
pharmaceutically [2]   12/13
 13/16
Phillips [1]   17/18
phrase [5]   6/25 6/25 7/14 7/16
 16/5
phrased [1]   27/25
picked [1]   20/12
plain [1]   17/21
plaintiff [3]   1/9 11/20 11/21
Plaintiffs [1]   2/2
Plaza [1]   2/4
please [1]   3/5
plenty [1]   19/15
pocket [1]   29/24
point [11]   6/17 10/21 15/23
 21/16 21/16 22/4 22/14 27/16
 29/10 29/11 30/19
pointing [1]   6/1
points [1]   6/11

portions [2]   18/4 21/4
portions of [1]   18/4
position [3]   18/16 27/22 28/18
powerful [2]   8/17 10/4
precisely [1]   27/24
preclude [1]   19/12
preferably [1]   30/3
preferred [2]   32/18
premise [1]   26/2
prepared [2]   3/17 4/16
present [13]   5/23 7/10 7/16
 7/17 8/22 9/7 10/7 13/14 13/22
 14/1 19/15 27/7 31/3
PRESIDING [1]   1/7
pretty [2]   8/17 32/23
previous [1]   19/7
primarily [1]   19/21
prior [6]   10/10 11/3 19/9
 23/10 27/22 28/14
pristine [1]   22/24
private [3]   32/15 32/19 32/22
probably [2]   29/8 31/21
problem [8]   12/23 14/5 14/8
 19/4 21/9 25/14 25/15 25/19
proceed [3]   3/17 3/19 5/1
proceedings [3]   1/15 33/3 34/9
process [4]   24/24 28/10 28/11
 31/24
product [5]   14/23 24/25 25/9
 27/13 28/7
production [1]   31/25
products [2]   19/7 19/8
proposals [1]   4/14
proposed [1]   12/24
proposing [1]   16/6
prosecution [5]   10/18 10/21
 10/23 11/1 19/18
provide [2]   13/6 31/5
provided [2]   6/9 7/10
provides [1]   28/4
public [1]   25/20
purpose [3]   24/10 27/6 28/7
purposes [3]   11/2 11/4 22/19
pursuant [1]   34/6
put [4]   12/9 25/8 30/10 30/16

**Q**

quarter [1]   29/25
quarters [1]   16/14
question [7]   5/11 11/2 11/21
 15/5 19/12 22/14 31/6
quoted [1]   30/24

**R**

raise [2]   4/18 32/8
raised [1]   8/21
range [34]   7/4 7/22 8/10 9/8
 10/7 11/6 11/16 13/10 14/19
 15/3 15/6 15/10 15/15 15/19
 15/22 17/12 18/17 19/2 19/4
 19/8 19/9 19/11 19/16 21/11
 26/19 27/18 28/3 28/7 28/20
 29/12 29/19 29/25 30/5 31/4
ranges [6]   6/1 30/20 30/20
RBC [1]   2/4
reached [1]   29/24
reactions [1]   13/7
read [4]   5/25 27/11 27/13
 28/19
reading [3]   16/24 17/24 17/25
ready [1]   32/10
Real [1]   2/7
really [8]   3/24 4/2 4/21 5/4
 26/12 26/13 27/5 32/6

## R

reason [1] 22/16
reasons [3] 4/22 5/10 11/7
recall [2] 21/18 32/21
received [1] 3/16
recent [1] 17/19
recently [1] 32/9
recites [1] 8/24
record [1] 16/25
refer [3] 5/4 6/10 12/2
reference [6] 8/4 23/15 23/16
 23/17 24/1 24/13
references [9] 7/8 16/17 17/11
 23/10 23/15 23/20 23/22 24/3
 24/6
referred [1] 10/1
referring [1] 12/21
regulations [1] 34/11
related [1] 21/18
relates [1] 13/14
relative [1] 13/24
relatively [1] 17/19
release [1] 7/19
relied [1] 19/24
repeat [1] 8/9
repeated [1] 22/11
reply [1] 22/12
reported [1] 34/8
REPORTER [1] 34/16
REPORTER'S [1] 1/15
required [1] 32/12
respond [1] 4/19
response [1] 7/6
result [1] 22/24
reviewed [1] 4/13
RICHARDSON [3] 2/3 2/7 2/10
right [9] 3/15 4/7 4/20 5/19
 18/13 21/5 21/14 23/18 30/16
rigid [1] 9/10
rise [1] 26/15
RPR [1] 1/19
rule [5] 8/17 9/9 9/10 17/20
 22/3
ruled [5] 21/20 21/24 21/25
 22/13 24/9
ruled upon [1] 21/24
ruling [1] 3/21

## S

SACV [2] 1/10 3/2
SACV-13-1436-AG [2] 1/10 3/2
Sadozai [1] 23/16
said [22] 4/8 8/7 9/3 9/14
 10/19 10/22 15/6 20/14 21/23
 22/7 22/13 22/15 24/3 28/14
 29/1 29/7 29/21 30/10 30/17
 30/18 31/13 31/14
salts [10] 8/4 8/23 8/24 9/1
 12/14 13/16 20/10 20/11 20/15
 20/20
Same [1] 16/21
San [1] 2/8
Santa [3] 1/16 1/20 3/1
say [23] 6/15 7/2 7/4 8/18
 16/3 16/3 16/8 16/16 18/21
 21/9 21/12 24/4 25/13 26/12
 26/17 27/14 28/12 29/14 30/17
 31/7 31/9 31/14 31/14
saying [4] 8/10 10/13 14/16
 18/25
says [22] 6/2 7/12 9/7 9/15
 9/18 19/22 12/11 15/25 16/4
 16/25 17/3 17/13 20/19 20/20

## 

24/14 28/14 29/13 30/8 30/9
 30/14 30/14 30/15
scheduling [1] 32/8
scope [11] 5/8 5/22 7/2 7/23
 8/3 9/4 9/6 9/25 10/12 17/22
 29/16
SCOTT [2] 2/17 3/13
second [2] 6/17 9/8
section [4] 12/21 17/5 25/2
 34/6
sections [2] 4/25 5/4
see [1] 18/9
seeking [1] 28/2
seen [1] 30/11
SEFFENS [3] 1/19 34/15 34/16
select [1] 32/22
selected [1] 32/19
send [1] 28/25
sense [1] 4/15
sent [1] 3/16
sentence [18] 12/11 13/21 20/2
 20/5 20/5 21/2 21/12 21/12
 29/12 29/12 29/19 30/7 30/8
 30/9 30/9 30/23 30/25 31/2
sentences [2] 5/13 5/24
separate [1] 19/23
set [2] 21/17 23/7
settlement [4] 28/25 32/1 32/8
 32/12
seven [1] 22/12
SHARON [3] 1/19 34/15 34/16
should [4] 3/17 3/19 9/20
 22/23
show [3] 15/11 24/12 25/7
shown [1] 25/7
side [2] 3/23 24/25
significantly [1] 6/21
simple [1] 22/16
simply [2] 5/25 8/3
single [1] 28/22
sir [1] 26/24
six [7] 8/3 8/23 8/24 9/1 20/2
 20/4 20/17
Sixth [2] 2/4 2/15
skill [1] 27/10
skilled [1] 24/4
smaller [1] 28/5
so [30] 4/6 6/16 7/20 10/3
 10/24 11/7 12/4 15/11 17/4
 18/9 18/15 19/2 19/6 19/9
 19/24 20/5 20/14 21/22 23/5
 24/2 24/17 25/4 25/21 25/24
 26/2 26/15 30/2 30/9 30/15
 32/21
soft [5] 6/22 12/12 13/2 13/6
 13/14
sole [2] 10/11 10/14
solubility [4] 21/19 24/8 25/4
 26/5
soluble [5] 24/4 24/15 24/20
 24/23 25/4
soluble-free [1] 24/20
solve [2] 12/23 21/9
solved [1] 14/5 19/4
some [14] 6/3 7/12 13/17 18/20
 18/24 22/10 29/13 30/25 31/3
 31/4 31/5 32/3 32/5 32/23
someone [1] 26/12 32/22
something [6] 18/23 26/1 28/8
 29/1 29/8 29/21
South [1] 2/4
SOUTHERN [1] 1/6
speaks [1] 9/12
species [2] 24/17 24/18

## 

specific [7] 4/25 7/11 7/18
 8/12 9/2 15/5 20/8
specifically [1] 6/25
specification [20] 7/2 7/21
 8/5 8/6 8/10 8/22 9/12 9/17
 10/1 11/5 11/15 11/23 18/2
 18/8 22/18 26/10 27/17 28/23
 29/11 31/10
specifications [2] 7/5 11/17
spoke [1] 9/13
squarely [1] 27/5
stability [3] 13/24 14/11 28/4
stable [3] 13/8 14/7 14/23
stand [1] 4/14
standard [1] 30/13
standing [3] 27/4 27/20 27/23
start [3] 5/12 12/3 31/4
started [1] 25/14
starting [2] 12/22 13/21
starts [1] 30/25
stated [1] 24/10
statement [14] 5/8 5/14 5/21
 8/2 8/9 8/22 9/4 9/5 9/24 10/6
 10/11 11/8 14/11 27/6
statements [3] 15/16 19/23
 20/23
STATES [4] 1/4 1/19 34/7 34/11
stating [1] 8/16
stenographically [1] 34/8
still [5] 16/11 16/21 22/15
 25/9 29/15
stop [1] 28/15
Street [3] 1/20 2/4 2/15
strengthens [1] 11/9
structure [2] 20/7 20/9
studied [1] 7/22
subdermal [2] 12/12 13/15
submission [1] 31/20
submit [1] 4/17
submitted [2] 4/14 31/17
such [2] 12/25 18/21
sufficiently [1] 28/6
suggestions [2] 3/18 3/19
Suite [2] 1/20 2/15
summary [15] 13/12 14/24 15/12
 15/24 16/22 17/7 17/10 18/13
 18/15 18/17 21/10 25/12 26/8
 27/11 28/10
superflous [1] 8/15
Surely [1] 10/13
Surrebuttal [1] 31/11

## T

take [8] 4/3 14/21 20/15 20/16
 22/19 23/5 29/22 31/20
talk [6] 4/6 6/7 28/11 30/20
 32/8 32/21
talked [1] 19/19
talking [5] 7/11 7/18 7/21
 29/17 30/1
talks [5] 6/14 6/19 6/20 6/22
 24/22
taught [1] 26/21
teaching [1] 27/10
technology [1] 3/22
tell [2] 14/5 25/17
telling [2] 12/5 21/6
tentative [12] 3/16 3/21 4/10
 4/13 4/17 5/1 5/7 6/8 18/6
 21/14 22/3 24/14
tentatives [1] 4/22
term [6] 7/10 9/13 9/13 9/16
 10/19 10/21
terms [1] 13/20

**T**

test [2]   10/11 10/14
testing [2]   11/5 11/6
Tezel [2]   24/12 24/13
than [43]
Thank [2]   4/23 26/23
Thanks [1]   33/1
that [171]
that cross-linked [1]   23/23
that's [33]   4/3 4/22 7/22 7/24
 9/19 10/10 10/14 11/5 11/13
 12/4 12/5 14/8 14/13 14/19
 15/4 19/10 20/11 20/17 21/13
 25/25 26/19 26/21 26/21 28/9
 29/5 29/16 29/25 30/11 30/13
 30/19 31/9 32/6 32/21
the term [1]   9/13
their [9]   21/8 21/17 21/22
 22/12 24/10 25/9 26/2 27/20
 32/12
them [5]   13/3 13/4 13/5 20/16
 20/17
then [19]   6/20 8/11 8/24 12/20
 12/25 13/12 13/20 16/1 17/3
 17/10 20/7 20/18 22/9 22/14
 24/22 28/11 28/15 28/20 31/4
therapeutic [1]   12/24
therapeutically [2]   12/15
 13/18
there [49]
there's [4]   6/9 12/17 14/15
 19/8
thereby [1]   7/1
thereof [1]   12/14
these [7]   19/18 20/8 20/22
 20/23 24/11 26/21 30/12
they [74]
they're [3]   7/18 7/21 18/3
thing [1]   16/21
things [4]   4/16 19/18 30/12
 31/22
think [32]   3/23 3/23 5/2 7/7
 7/20 8/8 10/3 10/13 11/7 11/8
 11/24 11/25 15/11 16/18 19/5
 19/6 19/6 19/7 19/14 21/13
 21/14 22/21 23/6 23/14 26/15
 27/3 27/17 27/20 27/23 29/22
 29/25 32/5
third [2]   32/11 32/13
this [58]
Thorner [2]   17/18 17/25
those [18]   6/13 6/16 6/18 8/20
 8/24 9/1 11/4 11/7 11/9 18/13
 20/2 20/17 20/19 20/20 21/4
 24/4 25/17 32/17
though [2]   9/15 30/6
thought [1]   32/14
thoughts [1]   7/25
three [4]   16/14 17/13 26/25
 30/24
three-quarters [1]   16/14
through [4]   12/20 18/12 18/14
 20/14
throughout [9]   7/5 7/21 8/9
 10/1 11/17 11/23 17/10 18/2
 28/22
thumb [1]   9/9
time [2]   26/11 26/24
tissue [4]   6/22 12/12 13/6
 13/14
title [4]   12/3 12/4 26/7 34/7
to 2 [1]   26/14
today [5]   4/15 22/2 30/3 31/21

 32/5
told [3]   20/6 21/7 32/22
too [2]   20/12 32/21
total [3]   24/15 24/18 24/18
transcript [4]   1/8 1/15 34/8
 34/10
treatment [1]   14/22
trial [1]   32/10
tries [1]   20/18
true [1]   34/7
try [1]   27/25
trying [3]   21/9 21/12 22/16
TUESDAY [1]   3/1
tutorial [3]   3/24 4/11 4/12
two [11]   5/13 5/24 6/11 7/25
 11/12 17/20 19/20 24/11 24/18
 25/17 28/14
TYLER [1]   2/18
type [1]   8/8

**U**

U.S [1]   34/16
unaffected [1]   22/24
undefined [1]   25/24
under [1]   31/20
understand [5]   15/23 16/7
 19/13 23/2 25/2
understands [1]   3/22
Understood [1]   23/25
undisputed [1]   25/20
unequivocal [5]   10/6 16/14
 16/16 20/3 20/6
unequivocally [2]   16/17 16/19
uniform [1]   19/24
uniformly [1]   18/1
UNITED [4]   1/4 1/19 34/7 34/11
unmodified [1]   24/23
up [13]   4/3 5/24 7/3 10/3 11/1
 21/5 21/8 21/17 23/7 27/8 28/8
 31/7 32/9
upon [4]   19/24 21/20 21/24
 25/22
us [1]   31/6
USA [2]   1/9 3/2
usable [3]   13/8 14/8 28/9
use [3]   7/10 28/4 29/14
useable [2]   14/23 28/7
used [10]   7/25 9/3 9/24 10/10
 11/23 11/24 11/25 11/25 18/1
 23/22
useful [1]   27/13
uses [3]   6/25 7/13 7/16
using [4]   6/24 13/4 13/5 31/8

**V**

vaguer [1]   8/5
value [1]   18/24
versus [1]   3/3
very [18]   5/5 7/12 12/11 13/13
 13/21 15/13 15/17 17/17 17/18
 17/19 20/1 20/4 22/16 25/1
 27/2 30/11 30/13 33/1
vessel [1]   9/19
view [1]   11/10
viscous [1]   28/6
vivo [1]   13/8

**W**

want [3]   4/6 16/25 22/15
wanted [3]   30/17 30/20 31/13
was [35]
wasn't [3]   10/10 10/22 10/23
water [8]   21/19 21/25 22/8
 23/11 23/13 23/23 24/4 26/5

way [4]   4/24 22/10 26/12 32/7
we [160]
WEBB [1]   2/18
welcome [1]   3/15
well [14]   4/13 5/5 6/8 7/24
 8/15 9/5 10/9 12/2 15/3 16/5
 22/21 27/14 30/4 31/7
went [3]   18/12 18/14 20/14
were [16]   4/14 7/4 8/16 11/5
 11/6 14/14 19/7 19/20 19/23
 20/10 21/6 21/24 25/11 28/25
 30/1 33/3
West [1]   1/20
what [28]   4/15 5/21 6/21 7/6
 7/22 8/11 10/25 11/5 11/24
 12/5 12/8 13/13 14/20 17/24
 20/1 20/6 21/7 21/8 22/24
 26/16 26/19 26/21 27/5 27/10
 29/14 30/6 32/8 32/21
what's [2]   11/14 27/6
when [14]   5/25 7/10 7/11 10/20
 11/25 15/5 16/24 20/18 24/24
 27/11 27/13 28/19 29/11 30/19
where [17]   8/1 9/9 11/25 14/16
 20/10 20/22 24/3 24/3 24/6
 26/17 29/17 30/15 31/6 31/8
 31/23 32/1 32/6
wherein [1]   6/23
Whereupon [1]   33/3
whether [6]   10/11 11/2 11/3
 11/4 15/6 27/23
which [15]   6/14 7/2 7/16 17/12
 17/13 17/13 17/18 18/24 24/2
 24/8 26/16 29/19 31/1 31/2
 32/17
while [2]   5/10 9/9
who [1]   19/7
whole [1]   25/14
why [8]   11/11 15/2 22/15 25/9
 25/23 29/16 30/3 31/9
will [11]   4/21 5/3 9/8 12/2
 15/11 16/7 22/24 29/21 30/2
 31/20 32/5
WILLIAM [1]   2/17
willing [2]   29/1 29/3
Wilmington [1]   2/11
wish [1]   5/1
within [8]   6/1 7/9 15/10 15/19
 15/22 19/8 19/9 29/15
words [4]   17/23 17/25 26/17
 30/24
world [4]   14/6 21/6 21/7 22/24
would [27]   4/3 4/17 4/18 5/2
 6/15 7/6 8/9 8/18 11/11 12/3
 18/9 18/19 18/21 18/21 19/3
 19/5 25/12 27/18 27/24 27/24
 29/3 29/8 29/22 30/18 30/19
 32/9 32/18
wouldn't [5]   19/1 29/4 29/13
 29/16 29/25
written [1]   11/12
wrong [1]   21/14

**Y**

Yes [4]   13/5 15/16 31/18 31/19
York [1]   2/19
you [88]
you're [2]   8/10 16/24
your [53]
yourselves [1]   32/17

**Z**

zero [1]   24/5