```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3         HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

 4   ALLERGAN USA, INC.,              )
                                      )
 5                                    )
                                      )
 6                  Plaintiff,        )
                                      )
 7                                    )
                                      )
 8        Vs.                         )  No. CV 13-1436-AG
                                      )
 9                                    )
                                      )
10   MEDICIS AESTHETICS, INC., ET AL.,)
                                      )
11                                    )
                                      )
12                  Defendants.       )
                                      )
13   _____)

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                   SANTA ANA, CALIFORNIA

18                 MONDAY, JANUARY 12, 2015

19

20

21            MIRIAM V. BAIRD, CSR 11893, CCRA
            OFFICIAL U.S. DISTRICT COURT REPORTER
22           411 WEST FOURTH STREET, SUITE 1-053
                SANTA ANA, CALIFORNIA 92701
23                    (714) 894-5384
                    MVB11893@aol.com
24

25
```

1    **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**     ELIZABETH M. FLANAGAN.
     **ALLERGAN:**                       MICHAEL KANE
4                                        FISH AND RICHARDSON PC
                                         222 DELAWARE AVENUE 17TH
5                                        FLOOR
                                         WILMINGTON, DE 19801
6                                        302-652-5070

7

8

9

10

11   **IN BEHALF OF THE DEFENDANT,**    WILLIAM FRANCIS CAVANAUGH,
     **MEDICIS:**                       JR.
12                                      PATTERSON BELKNAP WEBB AND
                                        TYLER LLP
13                                      1133 AVENUE OF THE AMERICAS
                                        NEW YORK, NY 10036
14                                      212-336-2000

15

16

17

18

19

20

21

22

23

24

25

|  |  |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; MONDAY, JANUARY 12, 2015; 10:35 A.M. |
| 2 | --- |
| 3 | |
| 4 | THE CLERK: SACV13-1436-AG, Allergan USA, Inc., et |
| 5 | al vs. Medicis Aesthetics, Inc., et al. |
| 6 | THE COURT: Appearances, Counsel. |
| 7 | MR. KANE: Good morning, Your Honor. |
| 8 | Michael Kane for Allergan plaintiffs. With me is |
| 9 | my colleague Elizabeth Flanagan this morning. |
| 10 | MR. CAVANAUGH: Bill Cavanaugh for the defendants, |
| 11 | Your Honor. |
| 12 | THE COURT: So you have received the tentative. |
| 13 | It's rather brief. Let's hear from the plaintiff. The |
| 14 | problem is that adding this new person, won't they be coming |
| 15 | in and saying totally adjust the standing patent rules and |
| 16 | won't everything be reopened, and isn't this a powerful |
| 17 | attack on the orderly procedures contemplated by our local |
| 18 | patent rules? |
| 19 | MS. FLANAGAN: Your Honor, the answer to that is |
| 20 | no. We have very unique circumstances here with the |
| 21 | defendant that we're seeking to add, Q-Med. |
| 22 | THE COURT: You are guaranteeing me they won't come |
| 23 | in and ask for extensions, et cetera on the local patent rule |
| 24 | deadlines? You're guaranteeing me that won't happen? |
| 25 | MS. FLANAGAN: I cannot guarantee you that won't |

|  |  |
|---|---|
| 1 | happen, Your Honor.  Mr. Cavanaugh may speak to that. |
| 2 | However, they should not because Q-Med has been indemnifying |
| 3 | the defendant in this case since day one.  It is their |
| 4 | contractual right and they're exercising it to conduct and |
| 10:36AM  5 | control this litigation.  So they have been behind every |
| 6 | theory that the defendants have asserted in this case, |
| 7 | including the invalidity contentions that are required by the |
| 8 | standing patent rules. |
| 9 | Your Honor, we know that Q-Med has adopted those |
| 10:36AM 10 | theories because they have taken the same positions on |
| 11 | invalidity in their inter partes review petitions that |
| 12 | they've submitted to the Patent Office trying to invalidate |
| 13 | these exact same patents.  So they've already been part of |
| 14 | this case.  They've created their invalidity theories. |
| 10:36AM 15 | They've been behind the scenes through the claim construction |
| 16 | proceedings, Your Honor.  So they have been involved in |
| 17 | controlling this case since day one. |
| 18 | So, Your Honor, if you add them to this case, there |
| 19 | is no need to change any of the summary judgement deadlines |
| 10:37AM 20 | or the trial deadlines in this case. |
| 21 | THE COURT:  Is it really important that they be |
| 22 | added? |
| 23 | MS. FLANAGAN:  It's important, Your Honor, in the |
| 24 | sense that we have identified an inducement claim against |
| 10:37AM 25 | them.  They are really the party that has been creating these |

1  compositions, distributing them through their distribution
2  channel here in the United States.  It's most efficient to
3  bring them in now since they have been behind the scenes in
4  this case crafting all of the theories, and, you know, paying
5  the lawyers, hiring the lawyers, creating all of the
6  strategy.
7          THE COURT:  Why did you wait four months to file
8  this motion after the discovery of the supply agreement?
9          MS. FLANAGAN:  Your Honor, we were trying in good
10 faith to get this issue resolved without bringing it to the
11 Court and causing the Court to get involved.
12         THE COURT:  Did they falsely lead you on?
13         MS. FLANAGAN:  Your Honor, they led us on in the
14 sense that we had meet-and-confers where they told us they
15 were willing to review the case law we had to see if Q-Med
16 would, in fact, be liable on an inducement theory.
17         THE COURT:  You think they delayed too long in
18 reviewing that case law?
19         MS. FLANAGAN:  Your Honor, in retrospect, maybe
20 they could have done it faster.  I don't think it was
21 necessarily unreasonable they took about a week to review the
22 case law and comment on it and come back to us.
23         The parties undertook a good-faith effort to try to
24 get this issue sorted out without involving the case.
25         THE COURT:  A good-faith effort requires four

| | | |
|---|---|---|
| | 1 | months? |
| | 2 | MS. FLANAGAN: Your Honor, if you look at the time |
| | 3 | frame of what happened in the parties' discussions, the |
| | 4 | parties' discussions on November 18th, there was a change in |
| 10:38AM | 5 | course. On November 18th, Q-Med, after reviewing our case |
| | 6 | law, changed their mind on liability. They acknowledged that |
| | 7 | there was an inducement claim. So the parties' good-faith |
| | 8 | negotiations led to a change by Q-Med. They never drew a |
| | 9 | line in the sand before December 1 -- 1 -- December 1st is |
| 10:38AM | 10 | when they finally drew a line in the sand and said we won't |
| | 11 | agree to be added to this case no matter what. |
| | 12 | THE COURT: Well, I think since respectfully, the |
| | 13 | clock was ticking against you, you need to draw a line in the |
| | 14 | sand. You need to say, either we get an answer from you by |
| 10:39AM | 15 | August 25th, or we're bringing a motion. The clock is |
| | 16 | ticking against you. It's not for them to draw lines in the |
| | 17 | sand. It's for you to draw lines in the sand to get an |
| | 18 | answer or file a motion. |
| | 19 | MS. FLANAGAN: Your Honor, we were working towards |
| 10:39AM | 20 | that goal. We did -- if you look from the time when they |
| | 21 | changed their mind on December 18th to when we actually |
| | 22 | moved, there was only four weeks. In that time, Q-Med |
| | 23 | finally drew the line on December 1st. We came two weeks |
| | 24 | later to this Court and made this motion. |
| 10:39AM | 25 | Your Honor, if you look again at who Q-Med is and |

|  |  |  |
|---|---|---|
|  | 1 | the timing of this, they've been involved from day one. |
|  | 2 | Whether we moved on November -- |
|  | 3 | THE COURT: So why didn't you sue them on day one? |
|  | 4 | MS. FLANAGAN: Because we didn't understand we had |
| 10:39AM | 5 | a claim against them, Your Honor, until we received the |
|  | 6 | supply agreements. When we sued -- when we brought this |
|  | 7 | case, Q-Med was just known to us as a Sweden-based |
|  | 8 | manufacturer of the accused products. We didn't have an |
|  | 9 | infringement claim against them until we received their |
| 10:40AM | 10 | document production in late August that showed us that they |
|  | 11 | were inducing the current defendants to infringe. |
|  | 12 | As soon as we got that claim, we started working |
|  | 13 | with them to bring this to closure, to get Q-Med in this |
|  | 14 | case, and to not cause Your Honor to be dealing with this |
| 10:40AM | 15 | motion. |
|  | 16 | THE COURT: Tell me how you will be prejudiced if I |
|  | 17 | stick with this tentative? |
|  | 18 | MS. FLANAGAN: Your Honor, we would be prejudiced |
|  | 19 | in that we would not be able to just get rid of our claim |
| 10:40AM | 20 | against Q-Med right now. Your Honor, you saw that there are |
|  | 21 | some discovery issues that we raised in this motion. I think |
|  | 22 | a worthwhile thing to point out to you is that since the |
|  | 23 | briefing closed, Q-Med has actually inserted themselves into |
|  | 24 | this case by virtue of the new defendant Galderma |
| 10:41AM | 25 | Laboratories. |

|            |    |                                                                        |
|------------|----|------------------------------------------------------------------------|
|            | 1  | We received initial disclosures from Galderma on                        |
|            | 2  | December 29th in which they identified two Q-Med employees as          |
|            | 3  | persons with knowledge and whom they would rely on to prove            |
|            | 4  | their claims or defenses in this case.  So Q-Med has inserted          |
| 10:41AM    | 5  | themselves into this case after this motion was filed.                 |
|            | 6  | So they're taking the position that they can be                         |
|            | 7  | brought into this case to help with their sister company               |
|            | 8  | Galderma Labs' case, but then try to prevent discovery                 |
|            | 9  | against us in terms of document discovery.                             |
| 10:41AM    | 10 | So Q-Med has jammed themselves in as part of their                      |
|            | 11 | trial strategy that they have been controlling all along.  So          |
|            | 12 | now we have Q-Med who is going to be showing up, bringing              |
|            | 13 | people to trial in this courtroom, but their -- but unwilling          |
|            | 14 | to show up in the caption of this case.  We don't understand           |
| 10:41AM    | 15 | why that is when there will be no prejudice to either Q-Med            |
|            | 16 | from this addition at this point in time and will not disrupt          |
|            | 17 | the trial schedule.  We are proceeding to trial in August, as          |
|            | 18 | Your Honor noted, and adding Q-Med will not disrupt that               |
|            | 19 | trial date whatsoever.                                                 |
| 10:42AM    | 20 | That really is how Allergan's diligence ties to the                     |
|            | 21 | good cause standard here.  Allergan is not asking to disrupt           |
|            | 22 | this Court's schedule in terms of summary judgement or trial.          |
|            | 23 | Another thing I want to point --                                       |
|            | 24 | THE COURT:  Let's be clear.  I'm not saying                            |
| 10:42AM    | 25 | Allergan will disrupt.  I'm saying a new defendant will say I          |

```
 1   need more time.
 2           MS. FLANAGAN:  They should not say that,
 3   Your Honor.
 4           THE COURT:  I want to be clear.  You said Allergan
 5   won't disrupt.  I have to be fair to defendants added late in
 6   a case.
 7           Anything further?
 8           MS. FLANAGAN:  One other thing, Your Honor, just
 9   last week the parties have agreed, of course, we will submit
10   this to the Court for approval, to push out the expert report
11   exchanges and expert and discovery deadlines.  We had some
12   deposition scheduling issues that the parties have agreed to
13   push the exchanges out by three weeks.  So we're looking now
14   at expert reports opening on --
15           THE COURT:  Some date.  Go ahead.
16           MS. FLANAGAN:  With -- and fact discovery closing
17   on April 10th.  So there will be plenty of time for Q-Med to
18   participate in discovery, and they are already participating
19   in expert discovery by virtue of controlling the litigation.
20           THE COURT:  Let's turn to Mr. Cavanaugh.  I asked
21   Ms. Flanagan for you to state how you would be prejudiced.  I
22   listened very carefully to your answer.  It wasn't a powerful
23   case of tremendous prejudice to you.  The only thing I heard
24   was you will have to deal with this defendant in another
25   context.  I gave you the chance.  That's what I heard.
```

```
 1              Let's hear from Mr. Cavanaugh.
 2              MR. CAVANAUGH:  Your Honor, when they filed this
 3   case in September of 2013, they knew Q-Med was the
 4   manufacturer.  So from the beginning of this case, they knew.
 5   Their new fact, they say well, there was an indemnity.  The
 6   indemnity goes back to 2006 agreement.  The indemnity doesn't
 7   create the case for inducement.  Manufacturers get sued all
 8   of the time for patent infringement under inducement
 9   theories.  The time to bring Q-Med into this case was back in
10   September.
11              THE COURT:  How will Q-Med be prejudiced if I add
12   them now?
13              MR. CAVANAUGH:  Well, they are, they submit, not
14   subject to the jurisdiction of this Court.  They will have
15   additional discovery burdens by virtue of being a defendant
16   in this case.  And I think we're going to run into a timing
17   issue.  It took Allergan -- because we had to go through the
18   Hague --
19              THE COURT:  Hold on.  Ms. Flanagan said there will
20   be no effect on any deadlines.  At least, she anticipated no
21   effect on any deadlines because you've been fully
22   participating as an indemnitor?
23              MR. CAVANAUGH:  Q-Med has not been participating as
24   an indemnitor.  They have recognized their indemnity
25   obligation.  They have been indemnifying the defendants --
```

```
                 1              THE COURT:  Let me be -- that's not -- the most
                 2    important words in my last sentence was fully participating,
                 3    not in what capacity.
                 4              Have you been fully participating?
10:45AM          5              MR. CAVANAUGH:  To some degree, but not -- not
                 6    Q-Med.  It's been -- the discussions, frankly, have been
                 7    between Galderma, which is a US-based company and which has
                 8    agreed to be added as a defendant in this case.  Frankly,
                 9    Your Honor, it's been Galderma, a US company, which consented
10:45AM         10    to -- I have not had any discussions with Q-Med, as a
                11    practical matter.
                12              THE COURT:  Anything else?
                13              MR. CAVANAUGH:  The two witnesses when Gal --
                14    through my discussions with Galderma, I learned of the
10:46AM         15    identity of --
                16              THE COURT:  How do the two witnesses relate to the
                17    matter now pending before me?
                18              MR. CAVANAUGH:  They are knowledgeable regarding
                19    the manufacturing process and the development of the
10:46AM         20    infringing products.
                21              THE COURT:  If that was meant to give me an
                22    explanation, I didn't catch it.  Sorry.  I don't know whether
                23    it's relevant to whether I should add new defendants.
                24              MR. CAVANAUGH:  It's not.  It's just a point
10:46AM         25    Ms. Flanagan raised.  In Galderma's initial disclosures,
```

|  |  |  |
|---|---|---|
|  | 1 | we -- when we came into information regarding relevant |
|  | 2 | witnesses, two witnesses in Q-Med -- |
|  | 3 | THE COURT: I'm not understanding how that is |
|  | 4 | relating to this motion? Anything else? |
| 10:46AM | 5 | MR. CAVANAUGH: No. That's it, Your Honor. |
|  | 6 | THE COURT: Reply. Particularly, reply, why did |
|  | 7 | you need the supply agreement and notice of indemnification? |
|  | 8 | Wasn't knowledge of them being the manufacturer of the |
|  | 9 | infringing product enough? |
| 10:47AM | 10 | MS. FLANAGAN: No, Your Honor, it wasn't enough. |
|  | 11 | We didn't know they were controlling activities here in the |
|  | 12 | US. |
|  | 13 | They are the manufacturer in Sweden. So we have to |
|  | 14 | have -- |
| 10:47AM | 15 | THE COURT: If they're manufacturing an infringing |
|  | 16 | product, isn't that enough? |
|  | 17 | MS. FLANAGAN: No, Your Honor, I don't think it is. |
|  | 18 | I think we need additional control to show that there is |
|  | 19 | actual inducement. I wanted to respond to a point that |
| 10:47AM | 20 | Your Honor raised about whether Q-Med was participating in |
|  | 21 | this case. I wanted, again, to point out that -- |
|  | 22 | THE COURT: Let me ask you this, though, if you |
|  | 23 | know they are the manufacturer, isn't that something you |
|  | 24 | should have focused on at the very beginning through |
| 10:47AM | 25 | discovery or otherwise to see if there might have been an |

|  |  |
|---|---|
| 1 | indemnification? |
| 2 | MS. FLANAGAN: Your Honor, we did do that. We |
| 3 | served document requests and interrogatories asking for |
| 4 | information about Q-Med's role with respect to the accused |
| 10:47AM 5 | products and to the defendants that we sued -- |
| 6 | THE COURT: For a case filed in 2013, you were not |
| 7 | able to get that information until far later? |
| 8 | MS. FLANAGAN: No, Your Honor. That's right. We |
| 9 | did not. |
| 10:47AM 10 | THE COURT: Okay. |
| 11 | MS. FLANAGAN: This spring we were spending time -- |
| 12 | THE COURT: All right. What else? |
| 13 | MS. FLANAGAN: I wanted to point out that, again, |
| 14 | Q-Med has assumed the defense of this action. That's what |
| 10:48AM 15 | they told the Patent Office in their inter partes review. |
| 16 | They are also using the same expert witness in their inter |
| 17 | partes review, as they've disclosed here, as their expert on |
| 18 | validity and non-infringement. |
| 19 | THE COURT: Thank you all. I've listened to the |
| 10:48AM 20 | argument. I was particularly interested in any prejudice |
| 21 | that might be affecting the different parties to this motion. |
| 22 | Having listened to all of the argument, I'm going to stick |
| 23 | with the tentative for the reasons set forth in the |
| 24 | tentative. Thank you. |
| 10:48AM 25 | MR. CAVANAUGH: Thank you, Your Honor. |

```
 1            MS. FLANAGAN:  Thank you.
 2            (Proceedings concluded at 10:50 a.m.)
 3                         CERTIFICATE
 4   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
 5   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN
 6   THE ABOVE MATTER.
 7   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE
 8   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE
 9   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
10
11   /s/ Miriam V. Baird                 01/28/2015
12   MIRIAM V. BAIRD                     DATE
     OFFICIAL REPORTER
13
14
15
16
17
18
19
20
21
22
23
24
25
```