Donald G. Norris (SBN 90000)
Douglas F. Galanter (SBN 93740)
Norris & Galanter LLP
523 W. Sixth St., Suite 716
Los Angeles, CA 90014
Tel:   213-232-0855
Fax:   213-286-9499
dnorris@norgallaw.com
dgalanter@norgallaw.com

William F. Cavanaugh (SBN 133461)
Scott B. Howard (admitted *pro hac vice*)
William F. Schmedlin (admitted *pro hac vice*)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:   (212) 336-2000
Fax:          (212) 336-2222
wcavanaugh@pbwt.com
sbhoward@pbwt.com
wschmedlin@pbwt.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLERGAN USA, INC., and ALLERGAN INDUSTRIE, SAS,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICIS AESTHETICS, INC., MEDICIS PHARMACEUTICAL CORP., VALEANT PHARMACEUTICALS NORTH AMERICA LLC, VALEANT PHARMACEUTICALS INTERNATIONAL, VALEANT PHARMACEUTICALS INTERNATIONAL, INC., AND GALDERMA LABORATORIES, L.P.<br><br>Defendants. | Case No. 8:13-cv-01436 AG (JPRx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY FROM PRIOR USE**<br><br>**FILED UNDER SEAL**<br><br>Date:     June 1, 2015 (proposed)<br>Time:     10:00 a.m.<br>Ctrm:    10D<br>Judge:   Andrew J. Guilford |

7864542v.1

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     STATEMENT OF FACTS .........................................................................................2

        A.      Background ...................................................................................................2

        B.      Evidence of Prior Use ..................................................................................3

        C.      Allergan's Changed Position ........................................................................6

III.    ARGUMENT ............................................................................................................7

        A.      Evidence That Does Not Require Corroboration Demonstrates Premixing in
                the United States Well Before August 2008 .................................................8

        B.      Dr. Nestor's Testimony is Sufficiently Corroborated ..................................11

        C.      Defendants May Continue to Add Evidence of Prior Use ...........................15

V.      CONCLUSION.........................................................................................................17

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NO
INVALIDITY FROM PRIOR USE
Case No. 8:13-cv-01436

7864542v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.3d 224 (9th Cir. 1988) ................................................................10, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................8

*Baxter v. MBA Group Ins. Trust Health & Welfare Plan*,
958 F. Supp. 2d 1223 (W.D. Wash. 2013)................................................11, 12

*Brown v. Barbacid*,
276 F.3d 1327 (Fed. Cir. 2002)................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................8

*Cognex Corp. v. Microscan Sys., Inc.*,
990 F. Supp. 2d 408 (S.D.N.Y. 2013)......................................................18

*Cooper v. Goldfarb*,
154 F.3d 1321 (Fed. Cir. 1998)...............................................................14

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)...............................................................14

*Finnigan Corporation v. United States International Trade Commission*,
180 F.3d 1354 (Fed. Cir. 1999)....................................................9, 13, 14, 16

*Gospel Missions of Am. v. City of Los Angeles*,
328 F.3d 548 (9th Cir. 2003) ..................................................................11, 12

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002)...............................................................16

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002).................................................................9

*Lacotte v. Thomas*,
758 F.2d 611 (Fed. Cir. 1985).................................................................14

ii

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NO
INVALIDITY FROM PRIOR USE
Case No. 8:13-cv-01436

*Lamuth v. Hartford Life & Accident Ins. Co.*,
   30 F. Supp. 3d 1036, 1050 (W.D. Wash. 2014)......................................................11, 12

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) (*en banc*) ...............................................................8, 12

*Loral Fairchild v. Matsushita Elec. Indus. Co.*,
   266 F.3d 1358 (Fed. Cir. 2001)...............................................................................14

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996).................................................................................9

*McLean v. 988011 Ontario, Ltd.*,
   224 F.3d 797 (6th Cir. 2000) ...................................................................................17

*Medichem, S.A. v. Rolabo, S.L.*,
   437 F.3d 1157 (Fed. Cir. 2006)...............................................................................13

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 1138 (2011)..............................................................................................8

*Murrey v. United States*,
   73 F.3d 1448 (7th Cir. 1996) ...................................................................................11

*Oscanyan v. Arms Co.*,
   103 U.S. 261 (1881)..................................................................................................11

*Resnick v. Netflix, Inc.*,
   779 F.3d 914 (9th Cir. 2015) ...................................................................................8

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   719 F.3d 1305 (Fed. Cir. 2013) (*en banc*) .............................................................13

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001)......................................................................2, 13, 15

*Sjolund v. Musland*,
   847 F.2d 1573 (Fed. Cir. 1988)...............................................................................10

*Thomson S.A. v. Quixote Corp.*,
   166 F.3d 1172 (Fed. Cir. 1999).................................................................. *passim*

*Wonderland Nurserygoods Co. v. Thorley Indus., LLC*,
   2013 U.S. Dist. LEXIS 80003 (W.D. Pa. June 7, 2013)...........................................17

iii

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NO
INVALIDITY FROM PRIOR USE
Case No. 8:13-cv-01436

*Zenith Elecs. Corp. v. PDI Comm'n Sys.*,
　522 F.3d 1348 (Fed. Cir. 2008)........................................................................10, 15

**Statutes**

35 U.S.C. § 102(a) .....................................................................................8, 9, 12, 14

35 U.S.C. § 103.........................................................................................................8

**Other Authorities**

10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2723................................11

Fed. R. Civ. P. 26....................................................................................................17, 18

iv

7864542v.1

## I.  PRELIMINARY STATEMENT

Plaintiffs Allergan USA, Inc. and Allergan Industrie, SAS (together, "Allergan") attempt to obtain partial summary judgment by ignoring their own ███████, admissions, ███████████ and claiming the "only" evidence of prior use of the claims-in-suit, doctors "premixing" or "swishing" (adding lidocaine to HA dermal fillers), before August 2008 comes from the uncorroborated testimony of Dr. Nestor, one of Galderma's experts.[1]  But as described below ████████



Allergan conceded this fact in its July 2014 claim construction brief. ████████

███████████████  Evidence of this type requires no corroboration and standing alone is sufficient to defeat Allergan's motion.

But this evidence also provides corroboration for Dr. Nestor's testimony that he was doing what Allergan and its inventor admit physicians were doing going back well before 2008.  Allergan's attempt to isolate and preclude Dr. Nestor's testimony regarding his premixing practices is flawed.  As a preliminary matter, one panel of the Federal Circuit has held that no corroboration is necessary when a non-party without any financial interest in the outcome of the case testifies as to prior use to invalidate a patent. *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999).

While another panel subsequently held corroboration is required even when the testimony on prior use comes from a non-party, it did not overrule the holding in *Thomson*, which remains good law.  Moreover, there is sufficient corroboration here, which is subject to "the rule of reason" standard, whereby "all

---

[1] For purposes of this motion, all references to Galderma refer collectively to all of the Defendants.

pertinent evidence is examined in order to determine" credibility.  *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (citations and internal quotation marks omitted).

Dr. Nestor's testimony that he was premixing HA dermal fillers well before August 2008 is quite consistent with the record evidence in this case. ██████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Published scientific articles in 2007 and 2008 show that doctors routinely added lidocaine to dermal fillers.

Moreover, Julie Santos, a physician assistant who has worked with Dr. Nestor since 1999, independently corroborates that Dr. Nestor was premixing.  As described further below, Plaintiffs' motion should be denied.

## II. STATEMENT OF FACTS

### A.   <u>Background</u>

Hyaluronic acid (HA) fillers are injected into the skin to fill wrinkles and create a more youthful appearance.  Galderma distributes Restylane®, the first HA filler approved in the United States (in 2003).  (Ex. A.[2])  Allergan manufactures and distrubutes Juvederm®, which the FDA approved in 2006.  (*Id.*)  The FDA approved another of Galderma's products, Perlane®, in 2007.  All of these fillers are "crosslinked" with a chemical called 1,4-butanediol diglycidyl ether ("BDDE").  Other manufacturers have also gained FDA approval to sell HA dermal fillers with other crosslinking agents.  (*Id.*)

Dermal fillers cause some discomfort, and practitioners have long used anesthesia to minimize it.  For example, collagen fillers, which predated HA for use in dermal fillers, was mixed with lidocaine.  (Ex. B.)  Unlike the collagen fillers that they

---

[2] "Ex." refers to exhibits attached to the declaration of William F. Cavanaugh accompanying this motion.

2

replaced, when initially approved for use in the United States, Restylane® (2003), Juvederm® (2006), and Perlane® (2007) did not contain lidocaine.

As a result, to address discomfort with HA fillers, ████████████ ███████████████████████████████████████████████████████████████ ████████████████ In February 2010, the FDA approved versions of both Restylane® and Juvederm® containing 0.3% lidocaine. (Ex. A.) But before August 2008, other manufacturers began incorporating lidocaine into HA fillers with other crosslinking chemicals during the production process. Elevess, an HA filler with lidocaine, applied for FDA approval in September 2005 and was approved in December 2006. (Ex. D.) Prevelle Silk, another HA filler with lidocaine, applied for approval in July 2007 and was approved in February 2008. (Ex. E)

The patents at issue, U.S. Patent Nos. 8,450,475 and 8,357,795, cover HA-BDDE dermal fillers containing lidocaine. They claim a priority date of August 4, 2008. Galderma asserts the patents are invalid, in part due to the pre-August 2008 practice of mixing HA fillers with lidocaine before injection.

**B.**   **Evidence of Prior Use**

There is ample evidence in the record that before August 2008, physicians were premixing lidocaine into HA dermal fillers in order to address the discomfort some patients may experience upon injection. ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████

Around the same time, Q-Med (the company that developed Restylane® and Perlane®), looked into adding lidocaine into their HA fillers. At his deposition, Galderma 30(b)(6) witness Per Lango, who was formerly employed at Q-Med, noted that in 2005 "physicians in Sweden . . . premixed hyaluronic acid with lidocaine[.]"

3

1   (Ex. V at 144:1 –146:21 (rough transcript).)  In 2006, Q-Med authored a report on a

2   clinical trial in which a doctor prepared premixed vials of Restylane® with lidocaine

3   in order to test the efficacy of adding lidocaine on pain relief.  (Ex. O at

4   QMED0005825.)

5          Thus, the fact that physicians were premixing lidocaine into HA fillers

6   going back to 2004 was no secret.  Allergan conceded in its opening claim

7   construction brief, filed on July 22, 2014, that

8          Dr. Pierre Lebreton began working on these compositions in the mid-
9          2000s.  ***At that time***, physicians were commonly treating patients with
            lidocaine either topically or by injection before injecting the HA filler.
10          Alternatively, ***some physicians were mixing lidocaine into the HA filler
            immediately before injection.***
11
12   (D.I. 61 at 4 (emphasis added).)



27
28   ³ "Swishing" refers to mixing dermal fillers with lidocaine immediately before injection.  (*See* Ex. L ¶ 46.)

4



a 2007 paper by Dr. Mariano Busso and Dr. David Applebaum, two Florida physicians, providing detailed instructions on how to mix the dermal filler Radiesse with lidocaine. (Ex. I.) It instructs practitioners to connect a syringe containing lidocaine with a syringe containing Radiesse, "introduce Radiesse® into the syringe containing anesthetic first. Then push the newly combined Radiesse® and 2% lidocaine back and forth from syringe to syringe until it becomes a homogeneous mixture." (*Id.* at AGNHA00298534–35.)[4]

Throughout the litigation, Allergan has never denied that doctors were already mixing HA fillers with lidocaine when Dr. Lebreton began his work. Instead, it has disputed whether doing so anticipates the patent claims at issue or renders them obvious and contended that the practice is not a non-infringing alternative. For

---

[4] Allergan also produced a follow-up study by Dr. Busso, entitled "An Investigation of Changes in Physical Properties of Injectable Calcium Hydroxylapatite in a Carrier Gel When Mixed with Lidocaine and with Lidocaine/Epinephrine." (Ex. J.) This study tested the effects of various lidocaine concentrations and mixing conditions on the physical properties of Radiesse.

7864542v.1

instance, Allergan's claim construction brief, while acknowledging this was a common practice at the time of invention, argued "the mixing was not precise and changed the properties (*e.g.*, viscosity) of the HA filler."  (D.I. 61 at 4–5.)

### C.  Allergan's Changed Position

Allergan took an abrupt about face on February 17, 2015, the same day Defendants served their opening expert reports, when for the first time it denied knowledge that premixing had occurred.  In responding to Defendants' First Set of Requests for Admission, Allergan contended it had "no knowledge" of any physician in the United States adding lidocaine to Restylane®, Perlane®, or Juvederm® products before August 4, 2007.  (Ex. R at 3–4.)  And Allergan contended it had "no knowledge" of any physician in the world adding lidocaine to Restylane®, Perlane®, or Juvederm® products before 2005.  (*Id.* at 4–5.)  Aware of Allergan's admission in its claim construction brief, Galderma filed its final invalidity contentions the same day Allergan served its responses to Galderma's requests for admission.  (Ex. U.)

Galderma's expert Dr. Glenn Prestwich had already completed drafting his report noting the practice of physicians to premix.  He also cited a 2009 article which noted "it is routine" to add lidocaine to any HA filler which does not come premixed.  (Ex. P ¶ 98 (citing Beasley, et al., *Hyaluronic Acid Fillers: A Comprehensive Review*, Facial Plast Surg 2009;25(2) at 86 (attached as Ex. Q).)  Galderma intended to introduce further evidence of premixing as part of its rebuttal reports on obviousness (secondary considerations) and damages.  Specifically, evidence of premixing is relevant to rebut Allergan's contention that there was a long-felt but unsolved need for a combined HA-BDDE and lidocaine dermal filler—a secondary consideration of non-obviousness.  It is also relevant to rebut Allergan's assertion of unexpected results.  The fact that physicians were premixing lidocaine

into HA fillers easily and without incident rebuts the contention that successfully

adding lidocaine was an "unexpected" result.  Finally, it is also relevant to damages.

Allergan appears to argue that physicians adding lidocaine is outside the scope of their

claims.  If that is the case then it is a non-infringing alternative.

After February 17, 2015, when Allergan backed away from its previous

admission and attempted to inject a fact issue where there had been none, Galderma

introduced further evidence of premixing in the rebuttal report of Dr. Mark Nestor.

(Ex. S.)  Dr. Nestor, who is based in Florida, states "I and other doctors began pre-

mixing lidocaine into Restylane® (a process Dr. Lupo describes as 'swishing') prior

to 2006."  (*Id.* ¶ 45.)  In addition to the Beasley article, Dr. Nestor cited an internet

article from 2009, discussing the practices of a doctor in Plano, Texas.  (*Id.* ¶ 46 n.29.)

Dr. Nestor's testimony of his own pre-mixing from before 2006 is corroborated by a

physician assistant, Julie Santos, who has worked with Dr. Nestor since 1999.  (Ex.

T.)  The Santos declaration provides detailed information on the mixing procedure.

(*Id.* ¶ 4.)

## III.   ARGUMENT

"Summary judgment is appropriate when 'there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law.'"

*Resnick v. Netflix, Inc.*, 779 F.3d 914 (9th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).

A "material fact" is one that "might affect the outcome of the suit under the governing

law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine

issue of material fact when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Id.*  In considering a motion for summary

judgment, the court must examine the evidence in the light most favorable to the

nonmoving party.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).

The moving party bears the burden of showing the absence of genuine issues of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7

A patent is invalid if, among other things, "the invention was known or used by others in this country . . . before the invention thereof by the applicant for a patent," 35 U.S.C. § 102(a), or "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Facts supporting an invalidity argument must be proven by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 1138 (2011).

For the purposes of this motion Allergan is relying on a date of invention of August 4, 2008. (D.I. 123-1 at 8 (footnote).) To defeat Allergan's motion, Galderma need only demonstrate that the evidence, read in the light most favorable to Galderma, creates a material issue of fact as to whether doctors were combining HA fillers with lidocaine before August 2008 and therefore is prior art under § 102(a).[5]

## A.   Evidence That Does Not Require Corroboration Demonstrates Premixing in the United States Well Before August 2008

Allergan's argument is premised on the assumption that all evidence of prior use requires corroboration. That is not true. Only certain types of oral testimony require corroboration. *See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002) ("Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent."); *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172, 1175 (Fed. Cir. 1999) ("[A]n inventor's testimony alone respecting the facts surrounding a claim of derivation or priority of invention cannot satisfy the clear and convincing standard without corroboration."). [6] Non-testimonial evidence needs no corroboration. *See, e.g., Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) ("This corroboration rule does not apply with the same force to proof of inventive

---

[5] Evidence of premixing will also be introduced at trial to show there was not a long-felt need for an HA-BDDE filler with lidocaine and that premixing is an acceptable non-infringing alternative.

[6] The corroboration requirement for prior uses under § 102(a) or (b) is the same as the requirement for priority disputes under § 102(g). *Finnigan Corp. v. U.S. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).

facts with physical exhibits."); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577–78 (Fed. Cir. 1996) ("This court does not require corroboration where a party seeks to prove conception through the use of physical exhibits.").  In this case, there are three types of evidence of prior use that do not require corroboration.

Documents do not require corroboration ███████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████ That is evidence of premixing in the United States by physicians before August 2008. ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████

Admissions do not require corroboration.  *See Sjolund v. Musland*, 847 F.2d 1573, 1579 (Fed. Cir. 1988) ("Given Sjolund's admission, substantial evidence supports only one finding, namely that [the invention] . . . [was] known or used by others prior to the date of Sjolund's invention); c*f. Zenith Elecs. Corp. v. PDI Comm'n Sys.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (considering testimony from employees of patentee as corroboration of public-use date of invention). ███████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

Allergan's admission in its claim construction brief does not require corroboration.  In their opening claim construction brief, Allergan conceded that "in the mid-2000s" when "Dr. Pierre Lebreton began working on these compositions,"

7864542v.1

(i.e., before the date of invention), "some physicians were mixing lidocaine into the HA filler immediately before injection."  (D.I. 61 at 4.)  "For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.3d 224, 226 (9th Cir. 1988).  In the Ninth Circuit, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court."  *Id.* at 227 (emphasis removed); *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003); 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2723 (admissions in briefs "are functionally equivalent to 'admissions on file'" and "may show that there is an issue to be tried").

      "Judicial admissions . . . have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Am. Title Ins.*, 861 F.2d at 226 (citation omitted).  "Indeed, any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof."  *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1881); *see also Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("A judicial admission trumps evidence.").

      District courts in this circuit regularly consider statements in briefs as judicial admissions for the purposes of summary judgment.  *See, e.g., Lamuth v. Hartford Life & Accident Ins. Co.*, 30 F. Supp. 3d 1036, 1050 (W.D. Wash. 2014); *Baxter v. MBA Group Ins. Trust Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1332–33 (W.D. Wash. 2013).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These documents, combined with Allergan's judicial admission, provide compelling evidence that physicians were premixing well before August 2008.  It is particularly

appropriate to treat this is a judicial admission, where Allergan is attempting to manufacture an issue after conceding there was none.  It cannot acknowledge prior use, effectively withdraw the factual issue from the case, and then attempt to win summary judgment on it.  *See Gospel Missions*, 328 F.3d at 557 ("Because Gospel Missions has never raised the issue of privity, the City relied on the statement as an admission, and Gospel Missions tried to benefit from the admission, we exercise our discretion and consider its statements to be a judicial admission of privity."); *Lamuth*, 30 F. Supp. 3d at 1050 (after admitting date of plaintiff's disability, "Hartford cannot now reverse course and point to a lack of evidence demonstrating when Dr. Lamuth first became disabled"); *Baxter*, 958 F. Supp. 2d at 1233 ("Plaintiff should not be permitted to abandon [an] argument and take a different position in later-filed briefing.")

In their *ex parte* motion to strike portions of Defendants' expert reports, which this Court summarily denied, Allergan contended its claim construction brief is "ambiguous" on when doctors became mixing.  (D.I. 124-1 at 7.) ███████████ ████████████████████████ it clearly states mixing was occurring when Dr. Lebreton began his work in 2004.  And, in a summary judgment motion, all ambiguities must be resolved in favor the nonmoving party.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).

Accordingly, wholly apart from Dr. Nestor's testimony, there is evidence of prior use under § 102(a) to deny Allergan's motion.

**B.    Dr. Nestor's Testimony is Sufficiently Corroborated**

Federal Circuit caselaw is unclear as to whether Dr. Nestor's testimony requires corroboration at all.  In *Thomson S.A. v. Quixote Corporation*, 166 F.3d 1172 (Fed. Cir. 1999), the court explained that

> [t]he cases that discuss skepticism of uncorroborated inventor testimony
> directed to establishing priority over an opponent's patent claim involve

11

7864542v.1

situations where the inventor is self-interested in the outcome of the trial and is thereby tempted to 'remember' facts favorable to his or her case. *Thomson*, 166 F.3d at 1176.  The court noted the corroboration rule had not been extended "to include non-inventors." *Id.* at 1176 n.4.  Though the witnesses in *Thomson* were "purported inventors," no corroboration was necessary because they were not parties, despite their business relationship with the defendant.  *Id.* at 1176.  Dr. Nestor is not a party to this litigation and has no interest in its outcome.  He does not claim to have invented premixing.  By this measure, his testimony needs no corroboration.

In *Finnigan Corporation v. United States International Trade Commission*, 180 F.3d 1354 (Fed. Cir. 1999), decided six months after *Thomson*, a different panel came to a different conclusion.  That panel held corroboration was necessary even of uninterested witnesses, though it purports to not conflict with *Thomson*.  *Finnigan*, 180 F.3d at 1367–69.  As the earlier decision, *Thomson* can only be overruled by an *en banc* decision.  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316 (Fed. Cir. 2013) (*en banc*).  As no such *en banc* reversal has taken place, the Federal Circuit and the District Courts are bound to follow it.

But even if this Court were to apply the rule articulated in *Finnigan*, Galderma has met its burden to allow a jury to consider Dr. Nestor's testimony that well before August 2008, he was premixing lidocaine into HA dermal fillers.  Corroboration is evaluated under "the rule of reason" standard, whereby "all pertinent evidence is examined in order to determine" credibility.  *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (citations and internal quotation marks omitted); *see also Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006) ("corroboration is fundamentally about 'credibility'").  "The law does not impose an impossible standard of independence on corroborative evidence by requiring that every point . . . be corroborated by evidence having a source totally independent of the [witness]; indeed, such a standard is the antithesis of

12

the rule of reason." *Cooper v. Goldfarb*, 154 F.3d 1321, 1331 (Fed. Cir. 1998) (citation and internal quotation marks omitted). Corroboration is not needed "for every factual issue contested by the parties." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1464 (Fed. Cir. 1998). And "sufficient circumstantial evidence of an independent nature can satisfy the corroboration requirement." *Cooper*, 154 F.3d at 1330. "Insistence upon 'documentary evidence'" as corroboration is "erroneous as a matter of law." *Loral Fairchild v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1364 (Fed. Cir. 2001).

Applying a rule of reason standard, there is more than enough corroboration of Dr. Nestor's testimony that premixing was a common practice before 2006 among himself and other doctors to allow a jury to consider it as prior art under § 102(a). (Ex. S ¶ 45.) There is also no need for corroboration as to Dr. Nestor's practice of premixing to the extent it is offered to address Allergan's secondary consideration arguments or on the question of damages. Dr. Nestor's specific uses of premixing lidocaine with an HA-BDDE filler such as Restylane® or Juvederm® is corroborated by Julie Santos, a physician assistant working with Dr. Nestor who specifically did some of the premixing for him. (Ex. T.) Such testimony—especially under the summary judgment standard—clearly satisfies the need for corroboration. *See, e.g., Finnigan*, 180 F.3d at 1368 (explaining *Thomson* stands for the proposition that an uninterested witness's testimony is adequately corroborated by a coworker's testimony); *Loral Fairchild*, 266 F.3d at 1364 (finding testimony of coworker and inventor's possession of material necessary to practice the invention to be adequate corroboration of inventor's testimony of reduction to practice); *Lacotte v. Thomas*, 758 F.2d 611, 612 (Fed. Cir. 1985) (testimony of research associate and evidence of inventor's withdrawal of supplies to practice the invention were sufficient corroboration of inventor's testimony of reduction to practice).

7864542v.1

But even apart from Ms. Santos's testimony, there is other corroborating evidence.  Dr. Nestor's statement that premixing was occurring before 2006 is corroborated ██████████████████████████████████████ and Allergan's admission that physicians were already mixing HA fillers with lidocaine when Dr. Lebreton began his work, (D.I. 61 at 4).  *See Zenith Elecs. Corp. v. PDI Comm'n Sys.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (witness's statements "are corroborated by testimony from other witnesses, documentary evidence, and Zenith's own admissions").

Dr. Nestor's testimony of premixing before August 2008 is also corroborated ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████  *See Sandt Tech.*, 264 F.3d at 1350–51 (contemporaneous documentary or physical evidence is "the most reliable" corroboration).

There is further evidence corroborating Dr. Nestor's testimony.  Q-Med's 2006 report on a clinical trial involving premixing Restylane® with lidocaine shows premixing extended to HA fillers.  Although it was conducted outside of the United States and is not prior art, the clinical trial shows that it was a common practice for physicians to add lidocaine to a HA-BDDE dermal filler prior to use.  By 2009, a published article by three U.S. doctors described it as "routine" to add lidocaine and epinephrine to "*any* HA that does not come premixed with lidocaine." (Ex. Q at 7.) This, along with indisputable evidence that U.S. physicians were mixing dermal fillers with lidocaine before August 2008, is more than enough to corroborate Dr. Nestor's testimony.  *See In re Jolley*, 308 F.3d 1317, 1325 (Fed. Cir. 2002) (inventor's participation in program employing certain compounds was sufficient circumstantial corroboration of his conception of invention involving those compounds).

14

7864542v.1

And the Busso article, published in 2007, definitively establishes physicians mixed dermal fillers with lidocaine in this country before August 2008. (*See* Ex. I.)  Authored by two Florida physicians, it describes in detail their procedures for combining Radiesse with lidocaine before injection.  The 2008 Busso article provides further evidence that doctors commonly mixed dermal fillers with lidocaine before injection before August 2008.  (*See* Ex. J.)  Allergan offers no evidence why physicians would have been premixing lidocaine into Radiesse (a non-HA filler) but not into HA fillers.   This published report of the use of lidocaine clearly corroborates that the addition of lidocaine to dermal fillers was a common practice in the United States.

Finally, in conducting a rule of reason test, "the level of interest of the testifying witness is an important consideration" in assessing corroboration. *Finnigan*, 180 F.3d at 1369.  Dr. Nestor has no financial interest in the outcome of this litigation.  Accordingly, the degree of corroboration necessary to permit Dr. Nestor to testify on this issue should be quite minimal.

## C.  <u>Defendants May Continue to Add Evidence of Prior Use</u>

Allergan accuses Defendants of attempting to "back-fill," but it is Allergan which reversed course from its previous concession that premixing was occurring at the time of the invention and refused to admit so in their discovery responses.  Defendants are entitled to respond to Allergan's backtracking.

Defendants' final invalidity contentions give Allergan full notice that Galderma intended to argue prior use in support of its invalidity case.  (Ex. U.)  The Court's Standing Patent Rules do not require more.  "The purpose of invalidity contentions is to require a party to crystallize its theories of the case early in the litigation and provide notice of the accusing party's specific theories of invalidity." *Wonderland Nurserygoods Co. v. Thorley Indus., LLC*, 2013 U.S. Dist. LEXIS 80003, at *7 (W.D. Pa. June 7, 2013) (internal quotation omitted).  As demonstrated by their

7864542v.1

claim construction briefing and expert reports, Allergan has been on notice of Defendants' premixing theories throughout the litigation and have sought to establish why premixing does not invalidate their patents.

Allergan's complaint that Defendants' invalidity contentions did not list the specific dates prior uses took place and the persons responsible seeks to capitalize on the pervasive premixing occurring at the time as well as the privacy of a doctor's office. This is not a case where the defendant is arguing the plaintiff's patent is invalid based on a rare and isolated prior use ████████████████████████ ████████████████████ Allergan's own claim construction brief filed last year. ██████████████████████████████████ ████████████████████████

Allergan's argument with respect to the Federal Rules of Civil Procedure complains that Dr. Prestwich's expert report did not itself have evidence of premixing by physicians. But experts are entitled to rely on assumptions that are proven elsewhere in the record. *See, e.g., McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."); *see also* Fed. R. Civ. P. 26(b)(4)(C)(iii) (permitting discovery on assumptions relied on by experts). Allergan's expert reports are replete with similar factual assumptions.

Similarly, Allergan's argument with respect to Dr. Nestor's report invents a rule that evidence corroborating an expert's testimony must be in the report itself. But an expert is required to provide "the facts or data considered by the witness in forming" his or her opinions, Fed. R. Civ. P. 26(a)(2)(B), not all other independent evidence corroborating the facts underlying his opinion. *Cf. Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 414–15 (S.D.N.Y. 2013) (denying summary judgment of no invalidity where expert's opinion was corroborated by other record evidence).

7864542v.1

Now that Allergan has challenged whether there is corroboration for Dr. Nestor's testimony that he was doing something for which there is ample evidence others were doing, Galderma has marshalled the evidence proving that corroboration and has done so well before the close of discovery.

**V.     CONCLUSION**

This Court should deny Allergan's motion for partial summary judgment.

Dated:  April 20, 2015

NORRIS & GALANTER LLP

PATTERSON BELKNAP WEBB & TYLER LLP

*/s/* William F. Cavanaugh, Jr.

Attorneys for Defendants

7864542v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 20, 2015 to all counsel of record via electronic mail.

<u>*/s/* Joseph R. Richie</u>
Joseph R. Richie

7864542v.1